By the Court.—Ingraham, J.
The action is brought by the plaintiffs, real estate brokers, to recover commissions for renting certain premises of the' defendant.
The obligation that a broker assumes and that he must perform before he is entitled to commissions, is stated in Sibbald v. The Bethlehem Iron Co., 83 N. Y. 381. Finch, J.,.in delivering the opinion of the court in that case says, “ The duty he undertakes, the obligation he assumes as a condition of his right to demand commissions, is to bring the buyer and seller to an agreement.”
The court among other cases cited the case of Wylie v. The Marine National Bank, 61 N. Y. 415, and in speaking of that case, it is said, “ It was held that to entitle a broker to commissions, he must produce a purchaser ready and willing to enter into a contract on the employer’s terms. This implies and involves the agreement of buyer and seller and meeting of their minds produced by the agency of the broker; ” and at page 382 it is said, “ But in all cases, under all and varying forms of expression, the fundamental and correct doctrine is, that the duty assumed by the broker was to bring the minds of the buyer and seller to an agreement of sale and the price *370 and terms on which it is to be made,' and until that is done his right to commissions does not accrue.”
Another principle established by that case is “ To such a contract as existed in the present case where no time for the continuance of the contract is fixed by its terms, either party is at liberty to terminate it, subject, only, to the ordinary requirements of good faith.”
Applying these principles to the facts of this case, it is clear that the plaintiffs had not performed the work that they were employed to do, the performance of which was necessary before they were entitled to compensation, as they had not effected the leasing of the premises before this authority was revoked.
There was no employment of the plaintiffs by the defendant to obtain a tenant for the premises. Another broker was in charge; had the keys of the building and had a sign on the building that persons wishing to rent should apply to him.
The plaintiffs sent Mr. Hulbert to look at the premises. He obtained admission to the property and had an interview with the defendant without disclosing the fact that he had been sent by the plaintiffs. Subsequently, plaintiffs wrote two letters to the defendant, asking him to call on them in regard to the property. Defendant, however, did not call, and several days afterwards one of the plaintiffs called at defendant’s house and had an interview with him. Subsequently another interview was had at which plaintiffs stated that the commission would fee ¡one per cent on the five years lease, to which defendant said “ that is all right.” Defendant then stated “ that eleven thousand dollars a year would take the building to a good party on a lease,” and plaintiff then, made an offer -on behalf of Mr. Hulbert of $11,000 for the first year, $11,500 for the second year and $12,000 for the three years thereafter. To that defendant said, “That looks very good. I will think it over and let you know.”
There were subsequent negotiations between Hulbert *371 and the defendant, and several letters were written by plaintiffs to the defendant to which no answer was returned ; and on January 31, 1887, plaintiffs wrote a letter to the defendant in which they say “ After considerable work on our part, we have induced them again (Merwin, Hulbert and Co.) to say they will take your building, No. 26 West 23d Street, upon the terms proposed by them and let the rent commence on the 15th of April. Thip they say is their best offer and they desire to hear from us at once your acceptance or rejection as they have several other places in view; ” and in reply to that letter on the same day defendant wrote to plaintiffs, “ The proposition you make for Messrs. Merwin, Hulbert and Co. for my building 26 West 23d Street on the terms of five years lease, I most ■ respectfully decline. The negotiation is now closed.”
Up to this time it is evident that the plaintiffs had not performed their obligation: they had not procured a tenant on terms satisfactory to the defendant. At no time had the defendant appeared anxious to have anything to do with them, or encouraged them to proceed on his behalf; and although the evidence would justify a finding, that there was an obligation to pay them the commissions if they had procured a tenant who had agreed to his terms and was satisfactory to him, there certainly was nothing that was said or done that would prevent defendant at any time revoking the authority that the plaintiffs had and that he did.
The plaintiffs subsequently endeavored to obtain from Mr. Hulbert a more favorable offer and failed, and then apparently abandoned the negotiations and had no further connection with the property.
There is not the slightest evidence of had faith on behalf of the defendant: he made no further efforts to negotiate with Hulbert, or, so far as appears, to lease the property.
It does appear, however, that about ten'days afterwards Mr. Hulbert went to the broker who had charge of the *372 property, made him a new offer for the property on more advantageous terms than the offer made by plaint-tiffs, which offer defendant subsequently accepted.
The efforts of plaintiffs had been unsuccessful; they failed to bring the defendant and the proposed lessee to an agreement; the negotiations were closed and as was said in Sibbald v. The Bethlehem Iron Co., supra, at page 387, they very plainly had acquired no right to the commissions for anything that might ,happen in the future, unless upon the solé and only ground that the defendant terminated the agency in bad faith and as a device to get the benefit of the plaintiffs’ labors without paying for them.
I think therefore the complaint should have been dismissed.
The judgment should be reversed and a new trial ordered.
Sedgwick, Ch. J., concurred.