## FLYNN *v.* HARLOW.

(*Superior Court of New York City, General Term.* July 5, 1892.)

1. APPEAL—NONSUIT—PRESUMPTIONS.
   On a motion to dismiss the complaint at the close of plaintiff's case without any evidence on defendant's behalf, plaintiff's evidence must be taken as true for all the purposes of an appeal, and all doubtful facts decided in his favor.

2. MASTER AND SERVANT—NEGLIGENCE OF COSERVANT—FALL OF FLOOR—EVIDENCE.
   Plaintiff's intestate was killed by the fall of the fourth floor of a building on which he was at work removing brick and mortar as it came up on an elevator, and depositing it on a scaffold near by. The fall was caused by overloading the scaffold. Defendant in person directed the accumulation of material on the scaffold, and there was nothing to show that decedent's fellow workmen were charged with any discretion in that respect. *Held*, that a nonsuit on the ground that decedent was injured by the negligence of his coworkmen, and that he was *particeps criminis* in overloading the floor, was improperly directed.

3. SAME—CONTRIBUTORY NEGLIGENCE.
   There being no outward indications of danger, decedent was not guilty of contributory negligence in remaining at his post of duty, and continuing his work.

4. SAME—NEGLIGENCE OF MASTER—OVERLOADING FLOOR.
   The floor in question having been calculated to sustain a weight of 225 pounds to the square foot at the furthest, and defendant having placed thereon a mass of material weighing more than 500 pounds to the square foot, the court erred in refusing to submit the question of his negligence to the jury.

Appeal from jury term.

Action by Kate Flynn, administratrix, against George Harlow, to recover damages for the death of plaintiff's intestate. From a nonsuit, plaintiff appeals. Reversed.

Argued before FREEDMAN, DUGRO, and GILDERSLEEVE, JJ.

*H. Warren Love*, for appellant. *Edgar Whitlock*, for appellee.

GILDERSLEEVE, J. On or about the 25th day of August, 1888, the defendant, as contractor and builder, was erecting and superintending the construction of a house on premises in West Eighty-Third street, in this city; and plaintiff's intestate, Charles Flynn, was employed by the defendant as a day laborer on this building. The particular service in which the deceased was engaged at the time of the accident hereinafter referred to, on the day aforesaid, was the removing of brick and mortar, contained in hods, from an elevator machine, which carried the materials from the ground up to the several floors above. At the time of the accident by which plaintiff's intestate met his death he was at work on the fourth floor, in taking the hods from the elevator and dumping the contents upon a scaffold near the elevator, for use in building the front walls of the house. While said intestate was so employed, the floor beams gave way, and precipitated the materials that had been deposited near the elevator, as aforesaid, upon the floor beneath, and carried it and all the other floors below, with their contents, down

to the cellar. The deceased fell with the floors, and was thereby killed. This action was brought to recover damages for the death of the plaintiff's said intestate, on the ground of the defendant's negligence and want of care and skill in the construction of said building, and in carelessly overloading the beams and girders of said building with mortar, brick, and other building materials. When plaintiff rested, the court below dismissed the complaint on the ground that there was no evidence of any negligence on the part of the defendant, but that whatever negligence there was attached to the plaintiff's intestate and his fellow workmen.

The dismissal of the complaint having been made upon the defendant's motion after the close of plaintiff's case, without any testimony whatever on defendant's behalf, the evidence contained in the record must be taken as true for the purposes of this appeal, and the appellant is entitled to have every doubtful fact found in her favor. *Colegrove* v. *Railroad Co.*, 20 N. Y. 494; *Wylie* v. *Bank*, 61 N. Y. 417. The testimony shows that the defendant was present, and supervised the work, at the time of the accident. The only inference to be drawn from the evidence as to the cause of the accident is that it was occasioned by overloading the fourth story with brick and mortar, which were brought up from the ground in the machine above referred to, under orders from defendant or his foreman and agent, with the knowledge of defendant. It does not appear that the quantity of material to be placed·on the fourth floor, or the other floors, was in the discretion of the laborers, of whom the intestate was one, and therefore that the overloading was an error of judgment on the part of said laborers. The intestate, with his immediate coworkmen, was on the fourth floor at the time of the accident, and these men were charged with the duty of taking from the elevator, at that point, such materials as were sent up in the hods, presumably by direction of the defendant or his foreman. The defendant and his foreman must be presumed to have known the quantity of brick and mortar necessary to complete the work. The evidence warrants such a finding of fact. McKeon, a fellow workman with intestate, swore that the defendant's foreman told them (the laborers) "that was the last day to run the machine, and that he wanted to get enough stuff on every floor to finish the front, so as to raise it a story higher, and that the machine would only run that day, and that there would not be a' day's work for the machine." McKeon further testifies that, just before the accident, the defendant came around and said: "Boys, you have got enough stuff on this floor,—enough to finish the building; just stop the machine." The intestate and the other laborers on the fourth floor, where the defendant gave these instructions, took the materials off the machine. The elevator returned to the ground floor, and, just after these laborers had emptied their hods, the floor went down, carrying the intestate with it to his death. This state of facts did not justify the conclusion of the learned trial judge that, although an injury resulting from the overloading of a building might create a liability, the right to recover could not belong to plaintiff, for the reason that the intestate was one of the overloaders, and a *particeps criminis*. It was not to the want of judgment on the part of the men, of whom intestate was one, that the accident was due. If the accident was the result of such a want of judgment, plaintiff has no cause of action, since it is elementary law that a master is not liable for the errors, mistakes, want of judgment, or negligence of fellow workmen. The intestate appears to have been free from contributory negligence. He, with his fellow workmen, was obeying the orders of the defendant, or his agent. The defendant was present, and saw the work going on. The affirmative proof indicates clearly that the intestate and his fellow workmen did not bring the misfortune upon themselves by their indiscretion. True, they did the work; but it was done by the direction and under the superintendence of the defendant, by whom it appears they were dominated and controlled. The intestate was merely

carrying out the directions of the defendant. There was no outward indication of the impending danger to warn the intestate of the peril that was before him, that called upon him for any effort to escape therefrom. Had he insisted upon leaving the floor, or refused to obey the orders of his superiors and continue the unloading of the machine as he had been directed to do, he would have been guilty of disobedience that would, perhaps, have warranted the defendant in discharging him. The work upon which the intestate was engaged was not what is known as extrahazardous in its nature, calling for the exercise on the part of the intestate of more than ordinary prudence and care. It was manifestly an accident such as, in the ordinary course of things, does not happen if those who have the management use proper care. The danger, as we shall subsequently show, was one of which the master had opportunities of knowledge not possessed by the laborers in his employ. From a careful analysis of all the evidence, it affirmatively appears that the intestate did not contribute in any degree to the accident that resulted in his death.

This question remains to be discussed, namely, was there sufficient evidence of negligence on the part of the defendant to entitle the plaintiff to have the case submitted to the jury? It is incontestable that the accident was caused by piling too much material on the floors, and especially upon the fourth floor, where the beams or floor timbers first gave way. There is no question here of a failure on the part of the defendant to supply proper tools or implements, nor any question as to whether the machinery was safe or sound, nor whether there was any defect in the building. The inspector of buildings testified that he examined the building the day before the accident; "that the building was in first-class condition; the walls were in first-class condition; all the conditions of the permit issued by the building department had been complied with to the letter;" and that the accident was due to overloading the floors. The question the defendant had to meet was this: Was there placed upon the fourth floor, by order of defendant or his foreman, a weight of materials in excess of the weight the floor was intended to, or could reasonably be expected to, bear? If so, was such order a mistake in judgment, for which defendant is not liable, or a gross oversight of existing and well ascertainable facts that constitute negligence? To put it more tersely, was the use of the premises by defendant so unreasonable as to evince negligence? If there was any evidence to sustain this proposition, and we are correct in holding, as we have already done, that the intestate was free from contributory negligence, it was the duty of the learned trial judge to submit the case to the jury. A master owes the duty to his servant of furnishing a safe and proper place in which to prosecute his work, and, when they are needed, the employment of skillful and competent workmen to direct his labor and assist in the performance of his work. This duty cannot be delegated by a master to a servant of any grade so as to exonerate the master from responsibility to another servant who has been injured by its non-performance. *Pantzar* v. *Mining Co.*, 99 N. Y. 368, 2 N. E. Rep. 24. Due care had been taken by defendant, as appears from the evidence, in the construction of the building, and there is no evidence of any hidden and internal defect therein that was the cause of the collapse of the building and the resulting injury; but the evidence, uncontradicted, warrants the conclusion that there was an overloading of the floors, by order of defendant, which was wrongful in a legal sense, and which amounts to a specific act of negligence in the use thereof. The defendant was entitled to use the floors and employ his servants upon and about the same by imposing upon said floors quantities of materials of such weight as the strength of the floor timbers could reasonably sustain. Within the limits of such reasonable use, the only limit was the capacity of the floors and the building. It might be assumed that the defendant, being an experienced builder and an intelligent man, had

specific knowledge of the strength of the floor timbers he used, and approximately of the strength of the building generally. This, however, is not necessary. The evidence indicates how the defendant knew the capacity of the floor timbers. The superintendent of buildings swears that "the floor beams, where the materials were, were calculated for strength to carry the weight of the floor, so that when you reached an average of 225 pounds to the square foot of weight placed upon that floor, then you would reach what we term a 'breaking point.' Each floor was constructed for 75 pounds to the square foot, with a factor of safety of 3." It further appears from the evidence that just before the accident, by the personal orders of defendant, or his foreman, there had been accumulated some twelve or thirteen thousand bricks upon the fourth floor, besides a suitable supply of mortar to be used in laying them, upon a scaffold seven or eight planks square. The plaintiff should have shown the exact or proximate size of these planks; but, assuming that they were planks of the size ordinarily used for the purpose to which these were subjected, we have a scaffold or floor space of about 8 by 12 feet, upon which all this material had been accumulated. It was testified that each brick weighed about 4 pounds; and if we leave out of consideration the mortar, which was evidently no small factor in weight, we find that the floor space in question was subjected to a weight of about 500 pounds to the square foot of surface,—more than twice the weight that the superintendent of buildings testified would bring the strain up to a breaking point. This was clearly such an oversight on the part of the defendant, who was present and directed and saw the condition of affairs, of existing and well ascertainable facts as to constitute negligence. The defendant was not warranted in ascertaining the full capacity of the floor as to strength by actual use in piling materials thereon. He must be presumed to have had a fair and reasonable knowledge of the business in which he was engaged, which includes a knowledge of at least the approximate strength of the floor timbers he had placed in the building, and a knowledge of the approximate weight of twelve or thirteen thousand bricks and a quantity of mortar that he had accumulated upon that floor.

The case at bar is not analogous to Dillon v. Railroad Co., 48 N. Y. Super. Ct. 283, where an injury resulted from the giving way of a floor that had been overloaded, and in which case the general term of this court held "that the defendant was justified in ascertaining the capacity of the floor and building as best he could by actual use in the course of his business." While we rest our decision upon the grounds above set forth, we may add that the case under consideration is not unlike the case of Green v. Banta, 48 N. Y. Super. Ct. 156. In that case the plaintiff and other servants of the defendant were dumping bricks upon a scaffold, when it fell, and plaintiff was injured thereby. The general term of this court held in that case "that it was the duty of defendant to furnish for plaintiff, to work upon, properly built scaffolding; and any negligence of the foreman or other workmen employed by defendant to erect the same was defendant's negligence, and not that of a fellow workman of plaintiff." It also held "that the fact that the scaffold gave way was prima facie evidence of negligence." For the reasons above indicated we are of opinion that it was the duty of the learned trial judge to submit the case to the jury. The judgment appealed from is reversed, and a new trial granted, with costs to abide the event. All concur.