(40 App. Div. 245.)

### BALET v. NEW YORK & N. J. BRIDGE CO.　·

(Supreme Court, Appellate Division, Second Department.　May 8, 1899.)

1. BRIDGE COMPANY—CONTRACT FOR PLAN—POWERS OF OFFICERS.
　　The construction of a bridge to span the Hudson river could not be begun or permitted until commissioners appointed by the state of New York and New Jersey had consented to and approved the same and the consent of the federal government was obtained.　The bridge company had an engineer and an assistant.　*Held*, that an engineer with knowledge of these facts could not assume that the vice president and secretary of the bridge company could contract with him for a plan of the bridge, without the ratification of the directors and approval of the public authorities.

2. SAME—SERVICES OF ENGINEER—COMPANY'S LIABILITY THEREFOR.
　　Where the vice president and secretary of a bridge company engaged, without express authority, an engineer to prepare drawings of the proposed bridge, from plans he had voluntarily submitted, and lithographs of the same, from which a cut of the bridge was made and published in the newspapers, accompanied by statements written by the engineer, for the purpose of influencing the public in favor of the proposed bridge, and to answer adverse criticisms, the consent of public authorities to its construction being required, the company is liable for the value of such use of his plans, drawings, etc., and services, exclusive of the work in preparing the original plan, where it accepted and received the benefit thereof.

Appeal from trial term, New York county.

Action by Joseph W. Balet against the New York & New Jersey Bridge Company.　Plaintiff appeals from an order dismissing the complaint, and directing exceptions thereto to be heard in the first instance at the appellate division.　Exceptions sustained, and new trial granted.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

John T. Fenlon, for appellant.

Archibald Foote Clark (Joseph D. Redding, on the brief), for respondent.　　。

WOODWARD, J.　The question involved in this appeal is whether the plaintiff was employed to draw certain plans and specifications for a bridge to be constructed over the Hudson or North river from New York City to New Jersey.　It is not contended that there was any written contract, or any employment by reason of any resolution on the part of the board of directors; but the action is brought on an oral employment by the vice president, Mr. Greene, and the secretary and treasurer, Mr. Swan, an acceptance of the work by the company, and a representation by the vice president and secretary and treasurer that the plans had "been accepted by the board of directors, and that was the plan on which the bridge should be built."　The testimony of the plaintiff is to the effect that he is an engineer who has constructed several bridges; that in July, 1891, he went to the office of the defendant at 214 Broadway, New York City, asked for the president, and met the secretary and treasurer, Mr. Swan, and the vice president, Mr. Greene, and told them he would like to make a plan for them.　They said, "We are the men who carry on the business here, and you can

talk to us." They asked about his ability to make plans, and he gave his history. They gave him a pamphlet, and also the dimensions, width of spans, clear opening, height, and other details. He began work, and at the end of six weeks submitted to. Messrs. Swan and Greene an elevation and plans and general strain sheets, which they looked over, and pronounced "very good." Some misunderstanding developing in reference to the clear height, plaintiff left the plans with the officers of the company mentioned, and started to draw further plans. In about two weeks plaintiff reappeared with further plans, when Mr. Swan said, "Now, that is the thing we want," and Mr. Greene made a similar statement. Subsequently Messrs. Swan and Greene told plaintiff that they would submit his plans to the board of directors, and in the week following Mr. Swan told plaintiff that the board of directors had accepted his plan. In December following, an article, prepared by the plaintiff, at the request of Mr. Swan, appeared in the New York Herald, containing a description of the proposed bridge, together with certain cuts prepared from drawings furnished by the plaintiff at the request of Mr. Swan. In this article it was stated that the plans prepared by the plaintiff would be used in the construction of the bridge. Messrs. Swan and Greene invited the plaintiff to be present at the ceremony of breaking ground for the New Jersey end of the bridge, as the engineer of the company; and, being present, he was introduced to various persons as the engineer whose plans had been accepted. It is now urged by the defendant that the plaintiff was not employed by defendant pursuant to any resolution of the board of directors, or pursuant to any authority of the board of directors delegated to officers or agents.

In the case of Tyler v. Association, 30 App. Div. 404, 52 N. Y. Supp. 77, this court held that a real-estate broker who went to the office of the defendant, and was referred to its secretary and general manager as the person with whom he might transact business, could not be prevented from collecting a commission which he had earned under the provisions of an oral contract entered into with such secretary and general manager, because such secretary and general manager had no authority to carry out the arrangement entered into with the customer produced by the plaintiff without the action of the board of directors. This decision was based upon the general rule laid down in the case of Davies v. Steel Co., 6 App. Div. 166, 39 N. Y. Supp. 791, "that an agreement by an officer or agent of a corporation who assumes to act in its behalf can be enforced against the corporation, where it has received the benefit of the agreement." This rule is differently stated in 2 Spell. Priv. Corp. p. 832, where, in speaking of executed contracts, made, without express authority, by an agent of a corporation, he says: "The assent of the corporation thereto will be presumed; for when a person has received and appropriated the fruits of a transaction done in his name, and under apparent authority from him, he thereby furnishes the highest possible evidence of his approval." These authorities are quite as strong in support of the plaintiff's contention as any upon which he relies; but they do not wholly meet the facts of the present case, which are distinctively different from those of any case in which the principle contended for by the plaintiff has been applied.

The construction of this bridge partook, in part at least, of a public character.   It was to extend over a navigable water, and, before any construction was to be begun or permitted, the consent of commissioners appointed by the states of New York and New Jersey, under acts passed for that purpose, was to be obtained, and they were required to approve the same.   All of these requirements were set out in detail in the pamphlet which was furnished to the plaintiff when he first made his application to be permitted to draw plans for the bridge. In addition to this, consent was required to be obtained from the federal government before any structure could be placed over the river. The pamphlet also disclosed that the defendant then had an engineer and an assistant, who, it is fair to presume, were appointed for the reason that they possessed the technical knowledge requisite to at least oversee and construct the work.   The work itself was practically of national importance; and it is quite evident that, under such circumstances, no plan would or could be accepted until it had passed the scrutiny of the board of directors of the defendant, and received the approval of state and national authorities.   These conditions, well known to the plaintiff when he made his first application, exclude the idea that he could assume that the persons with whom he talked had authority to make a valid and binding contract in respect to a plan for such bridge, without ratification by the directors or approval by the public authorities.   It is plain, from all that appears, that the defendant and its officers were quite willing to entertain and consider plans for such a formidable work, as might be submitted by any engineer.   It was a work calculated to excite the ambition of engineers in the development of plans which might prove acceptable, as such result would inure to the lasting renown of the fortunate engineer. We think, from all that appears, that the persons who talked with the plaintiff respecting these plans, and the plaintiff himself, did not contemplate, either the one to accept, or the other to furnish, by binding agreement, any plans, but that the former was willing, and invited plaintiff to submit a plan, which might or might not be adopted, dependent entirely upon future contingencies; and we also think that, under such circumstances, the vice president and secretary would have no power to accept any plan or create a legal obligation against the defendant in connection therewith.   Consequently, we think the court below was right in holding that there could be no recovery for the plans as furnished, or for the labor and time devoted to their preparation.   But, while we reach this conclusion, we are also of opinion that the plaintiff may become entitled to some compensation for the services which he has rendered.   The testimony disclosed that some attacks were made by the newspapers upon the defendant corporation after the plans had all been prepared, and, as the plaintiff claims, accepted by the defendant.   In order to meet the attacks which were made upon the corporation, it was determined by the vice president and the secretary, for the purpose of creating a favorable impression in the public mind, to publish in the public journals the plans which had been furnished by the plaintiff.   To that end, they requested the plaintiff to prepare certain drawings, and procure lithographs of the same to be made; and from these plans, lithographs, and draw-

ings a cut of the bridge was made to appear in the papers, accompanied by statements written by the plaintiff concerning the same. The plaintiff claims that this work was done and performed at the particular instance and request of the vice president and secretary of the defendant; and, as it operated for the direct benefit of the defendant, it must be held, to that extent, to have ratified and accepted the benefits arising therefrom. Under such circumstances, liability would attach for the fair and reasonable value of such service, and the use of the plans, lithographs, and drawings, under the principle enunciated in the cases hereinabove cited. Such right to recover, however, is not to be measured by what the preparation of the plans originally was reasonably worth, no matter how much time and labor were bestowed upon them. The plaintiff was the owner of such plans; he had title to them; and his compensation in this regard would be measured by the value of the use to which they were devoted, and his service in connection with the same. They still remain his property, and the defendant has acquired no right in them. Consequently, the recovery, if the plaintiff be entitled to recover, would be limited as herein stated. We do not, by any means, determine in this discussion what the rights of the parties are in respect of this matter. It is claimed by the defendant that the whole subject of publication was for the exclusive benefit of the plaintiff, in order to advertise him as an engineer. If such be the fact, then the plaintiff would be entitled to recover nothing. But upon this question, under the proof, he becomes entitled to have it considered by a jury; and, if the fact be as he claims, he is entitled to compensation. It follows that the exceptions should be sustained, and a new trial granted.

Exceptions sustained, and a new trial granted; costs to abide the event. All concur.