In Re Allen, 151 N. Y. 243, 45 N. E. 554, the case last referred to (Cruikshank v. Home for the Friendless) was cited and approved, and the court said:

"The rule is now the same as respects devises and bequests,—that any part of the estate not legally disposed of becomes a part of the residuary estate, and passes under a residuary clause embracing both real and personal property, in the absence of a contrary intention found in the will."

In Moffett v. Elmendorf, 152 N. Y. 485, 46 N. E. 845, the court again said:

"The lapsed devises went into the residue, as the common-law rule to the contrary has been done away with by the statute; and there is no longer any difference, as to the operation of a residuary clause, between lapsed devises and lapsed legacies."

The rule as to legacies is stated in Riker v. Cornwell, 113 N. Y. 124, 20 N. E. 602, and no distinction is made between lapsed and void legacies. Speaking of the general residuary clause in a will, the court says:

"It will include legacies which were originally void, either because the disposition was illegal, or because, for any other reason, it was impossible that it should take effect."

There is no solid ground for a distinction between lapsed devises and devises void because for any other reason they cannot be made effectual; and precisely the same reasoning which carries the void legacy to the residuary legatee takes, also, the void devise to the residuary devisee. The language of the residuary clause appearing in the will after making the specific devises mentioned, and which are shown to be ineffectual because of the indefinite description, "all the rest, residue, and remainder of my property, both real and personal," expresses no intent on the part of the testator to limit or exclude from the residuum anything personal or real,—anything whatever which for any reason might prove to be ineffectually disposed of. It expresses a clear intent on the part of the testator to make a full and complete disposition of his property, and a disherison of the heir at law is here very plainly declared. Riker v. Cornwell, 113 N. Y. 124, 20 N. E. 602; Hulin v. Squires, 63 Hun, 352, 18 N. Y. Supp. 309.

The interlocutory judgment sustaining the demurrer should be affirmed, with costs. All concur.

---

(57 App. Div. 520.)

NORTON v. GENESEE NAT. SAVINGS & LOAN ASS'N.

(Supreme Court, Appellate Division, Fourth Department. January 9, 1901.)

1. BROKERS—COMMISSION FROM BOTH PARTIES.
    Where a broker was merely authorized to find and introduce a person with whom his employer might effect an exchange of his property, and was not authorized to fix the value of the property or agree on any of the terms, his right to a commission was not affected by his also receiving a commission from the other party.

2. AGENT—AUTHORITY TO EMPLOY REAL ESTATE BROKERS.
    A general manager of a loan association, acting under a resolution of its directors, is presumptively authorized to employ a real-estate broker,

at the prevailing rate of commissions, to effect a sale or exchange of its property acquired under foreclosure, and unnecessary to its use in the execution of its corporate functions.

Appeal from Monroe county court.

Action by Walter M. Norton against the Genesee National Savings & Loan Association. From a judgment for plaintiff and an order denying a new trial, defendant appeals. Affirmed.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and LAUGHLIN, JJ.

David N. Salisbury, for appellant.
J. Frank Morse, for respondent.

LAUGHLIN, J. The action is brought on an assigned claim of one Fred E. Wilcox for commissions as a real-estate agent. It was shown upon the trial that one Reynolds, while acting as general manager of the defendant under a resolution of its board of directors designating him as such, and fixing his salary at $3,000 per annum, employed Clarence Perrine as an agent of the company, at a salary of $25 per week, to collect rents, and look after and make recommendations concerning the use, sale, or other disposition of the real property owned by defendant, situate in Rochester, Watertown, and Buffalo, and which it had acquired principally on foreclosures. After Perrine had worked in this capacity, drawing his pay therefor regularly, for a few weeks, he advised Reynolds that it would be for the interest of the company to exchange its real estate, which consisted of houses and lots, for business property, and informed Reynolds that it would be necessary, if that were to be done, to employ local real-estate agents or brokers, to whom commissions would have to be paid. Other evidence was given in behalf of plaintiff tending to show that Reynolds expressly authorized the employment of a local real-estate agent by Perrine, at a commission of 1 per cent., to assist in bringing about a trade of defendant's said property for business property centrally located. There was other evidence sufficient to authorize a finding by the jury that Perrine employed Wilcox, a real-estate agent residing in Rochester, to assist in bringing about such exchange of defendant's property for other real estate, upon the express agreement that Wilcox was to receive from defendant 1 per cent. commission upon the value of its property. That part of defendant's property which Wilcox was thus first employed to assist in so disposing of was estimated by Perrine to Wilcox as worth $23,000. Through the agency of Wilcox one Jacob D. Scott became interested in defendant's property, and on the 24th day of December, 1898, a contract for the exchange of property owned by Scott for some of the property owned by the defendant was made in writing between Scott and the defendant, through its secretary. It appears that subsequently to the making of this contract Scott executed certain leases upon the property, and that defendant objected to taking the property subject to such leases. It is contended in behalf of defendant that this contract was not authorized by it; but it becomes immaterial to determine that question, for the reason that the contract was affirmed and

ratified, as the evidence shows that the defendant subsequently brought an action to compel a specific performance thereof by Scott. It appears that Wilcox was also to receive a commission from Scott for this exchange of properties. Wilcox, however, was merely authorized to find and introduce a party with whom he thought it probable that defendant could make an exchange of properties. He was not authorized to fix the value of defendant's property, or to agree upon any of the terms of the exchange thereof. In short, no discretion was left to him, and no trust was reposed in him. He was, therefore, at liberty to receive a commission from each party, even without the knowledge of the other. Knauss v. Brewing Co., 142 N. Y. 70, 36 N. E. 867. The ordinary rule is that, in the absence of an express agreement to the contrary, a real-estate broker employed to effect an exchange of real estate is entitled to his commissions where, through his procurement, a contract for the exchange of properties has been agreed upon and entered into between his customer and the person with whom the exchange was to be effected, even though one of the parties be unable to fulfill the contract. Kalley v. Baker, 132 N. Y. 1, 29 N. E. 1091. It may have been a question of fact, under the evidence in this case, whether plaintiff was to receive his commissions in the event of the making of a contract, or only in the event of its consummation; but defendant did not ask that that question be submitted to the jury, nor did it except to the court's charge that "a broker is entitled to the commissions when the parties are brought together to make their deal." At the time of employing Wilcox, Perrine exhibited to him a business card which had been prepared for Perrine's use by the secretary of the company by the direction of the general manager, and which read as follows:

"Genesee National Savings & Loan Association of Rochester, N. Y., 11—22—'98.

"To the Members of the Genesee National Savings & Loan Association: The bearer, Mr. Clarence Perrine, has been appointed special agent of this association, and is authorized to make collections for and otherwise represent us in matters pertaining to the association.          Respectfully,
"[Seal.]                              H. C. Covell, Secretary."

It is strenuously urged that, notwithstanding his title and the position he occupied with the company, Reynolds was merely a special agent, and neither authorized to employ Perrine, nor to authorize the latter to employ Wilcox. We deem this claim untenable. It was presumptively within the ordinary scope of Reynolds' business as general manager to employ necessary assistants to properly transact the business of the company, and to employ a real-estate broker, at the prevailing rate of commissions, to effect a sale or exchange of defendant's property thus acquired, and unnecessary to its use in the proper execution of its corporate functions. Hastings v. Insurance Co., 138 N. Y. 479, 34 N. E. 289; Oaks v. Water Co., 143 N. Y. 430, 38 N. E. 461, 26 L. R. A. 544; Rathbun v. Snow, 123 N. Y. 343, 25 N. E. 379, 10 L. R. A. 355; Patterson v. Robinson, 116 N. Y. 193, 22 N. E. 372; Balet v. Bridge Co., 40 App. Div. 245, 58 N. Y. Supp. 19; Tyler v. Association, 30 App. Div. 404, 52 N. Y. Supp. 77; Powers v. Power Co., 23 App. Div. 380, 48 N. Y. Supp.

237; Cone v. Plaid Mills, 12 App. Div. 314, 42 N. Y. Supp. 160; Parmelee v. Associated Physicians & Surgeons, 9 Misc. Rep. 458, 30 N. Y. Supp. 250; Phillips v. Campbell, 43 N. Y. 271.

Upon the execution of the Scott contract, Perrine likewise employed Wilcox to procure an exchange of other property owned by defendant, and listed at the value of $54,000, and informed Reynolds that, in the event of a trade, Wilcox would expect the same commission as upon the deal with Scott. Wilcox brought to defendant one Charles B. Townsend, with whom a contract for the exchange of properties was subsequently made by defendant, and consummated by both parties. There can be no doubt but that it was the understanding of the parties that Wilcox was to receive the same commission upon this exchange of properties as upon the first. The court submitted it to the jury to determine, as a question of fact, whether, upon the evidence, it was the understanding and intention of the parties that the valuation of the property for the purpose of commissions was fixed and agreed upon, or as to whether the commissions were to be determined according to the actual value of the property as found by the jury upon the evidence given upon that subject. The jury found that the valuation was agreed upon by the parties, and, as there was sufficient evidence to justify their finding in that regard, it should not be disturbed.

We have considered the many exceptions pointed out by appellant's counsel, and, while some of the rulings of the court to which exception was taken were erroneous, other evidence in the case or the subsequent course of the trial rendered them immaterial, and they do not require a reversal.

The judgment and order appealed from should be affirmed, with costs. All concur.