(129 App. Div. 547.)

### SIEGEL v ROSENZWEIG.

(Supreme Court, Appellate Division, Second Department. December 30, 1908.)

1. BROKERS (§ 52*)—COMMISSIONS—WHEN EARNED.

Where a broker, employed to procure a purchaser of real estate for an agreed commission, fails to effect an agreement, and his authority is terminated, he gains no right to the commission, though subsequently the principal is benefited by his efforts, and a broker is not entitled to the commission, though the owner sells to the first person offering the price asked, and though the broker at the time has negotiations under way with a prospect of success.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 73; Dec. Dig. § 52.*]

2. BROKERS (§ 38*)—EMPLOYMENT—LIABILITY OF BROKER.

A broker, employed to procure a purchaser of real estate, is not liable to the principal for failing to exercise proper diligence to obtain a purchaser, nor for failing to communicate to the principal the fact that he has procured an intending purchaser; but he may terminate his efforts without notice to the principal.

[Ed. Note.—For other cases, see Brokers, Dec. Dig. § 38.*]

3. BROKERS (§ 65*)—COMMISSIONS—CONTRACTS WITH PURCHASER—VALIDITY.

A broker, employed to procure a purchaser of real estate for a specified sum on specified terms for an agreed commission, interested a third person in the premises. The third person requested the broker to do nothing further, but to permit the third person to deal directly with the owner. The third person promised to pay the broker a commission if he purchased. The third person subsequently purchased the premises from the owner. *Held*, that the broker was entitled to recover from the third person the agreed commission, for the contract did not rest on an immoral consideration, though no notice thereof was given to the owner.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 48–50; Dec. Dig. § 65.*]

Appeal from Trial Term, Kings County.

Action by Harris Siegel against Victor Rosenzweig. From a judgment for defendant, and from an order denying a motion for a new trial, plaintiff appeals. Reversed, and new trial granted.

Argued before WOODWARD, HOOKER, GAYNOR, RICH, and MILLER, JJ.

Jacob Manheim (Harry A. Gordon, on the brief), for appellant.
Joseph Wilkenfeld, for respondent.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

. HOOKER, J.   The plaintiff alleged and proved: That his assignor, a real estate agent, was authorized by the owners of certain premises to offer them for sale for $85,000 on certain specified terms, and that the owners agreed to pay him for his services a commission for procuring a purchaser for such premises; that thereafter the agent proposed the premises for purchase to the defendant, and at the latter's request told him the names of the owners of the premises, the terms and conditions on which, and the price at which, the premises could be purchased; that the defendant requested the agent to do nothing further in the negotiations for the sale of such premises, to permit the defendant to deal directly with the owners, and not to offer the premises for sale to any other person, and the defendant promised to pay plaintiff's assignor, if he complied with these conditions, a commission of 1 per cent. on the purchase price, in case the defendant actually purchased the premises; that plaintiff's assignor agreed to and did perform such conditions; that the defendant negotiated direct with the owners for the purchase of the property, later actually bought it for $84,500, but has not paid the commission of 1 per cent. which he agreed to pay to plaintiff's assignor.   At the end of the plaintiff's case, the court, of its own motion, directed a verdict in favor of the defendant, on the ground that the contract rests on an immoral consideration and cannot be enforced.

The argument by which the judgment is sought to be sustained is based upon the proposition that the plaintiff's assignor was guilty of a betrayal of the owners' interests.   If so, then, of course, the contract to betray may not be enforced for the reason assigned by the learned trial court.   To determine whether or not there was such betrayal, it is important to look at the terms which the law implies in a contract between owner and a real estate broker.   Among the terms of such contracts are the obligations of the owner to the broker, and it is well to have them in mind when it is sought to define the obligations of the broker to the owner.   In the leading case of Sibbald v. Bethlehem Iron Co., 83 N. Y. 378, 383, 38 Am. Rep. 441, the court says:

"It follows, as a necessary deduction from the established rule, that a broker is never entitled to commissions for unsuccessful efforts.   The risk of failure is wholly his.   The reward comes only with his success.   That is the plain contract and contemplation of the parties.   The broker may devote his time and labor, and expend his money with ever so much of devotion to the interests of his employer, and yet, if he fails, if, without effecting an agreement or accomplishing a bargain, he abandons the effort, or his authority is fairly and in good faith terminated, he gains no right to commissions.   He loses the labor and effort which was staked upon success, and in such event it matters not that after his failure, and the termination of his agency, what he has done proves of use and benefit to the principal.   In a multitude of cases that must necessarily result.   He may have introduced to each other parties who otherwise would have never met; he may have created impressions which, under later and more favorable circumstances, naturally lead to and materially assist in the consummation of a sale; he may have planted the very seeds from which others reap the harvest—but all that gives him no claim.   It was part of his risk that failing himself, not successful in fulfilling his obligation, others might be left to some extent to avail themselves of the fruit of his labors.   As was said in Wylie v. Marine National Bank, 61 N. Y. 416, in such a case the principal violates no right of the broker by selling to the first party who offers the price asked, and it matters not the

sale is to the very party with whom the broker had been negotiating. He failed to find or produce a purchaser upon the terms prescribed in his employment, and the principal was under no obligation to wait longer that he might make further efforts. The failure, therefore, and its consequences, were the risk of the broker only."

It is entirely apparent therefore that the owner may, without notice to the broker, absolutely revoke the authority in certain cases, provided, of course, it is done without the purpose of defeating the broker in the collection of commissions which he has already actually earned, and no one will assert that the broker has a right of action against the owner for selling to the first party who offers the price asked, even though the broker at the time has negotiations under way which bear the appearance of being successful, and even though the broker has not been accorded what might be deemed a reasonable time in which to find a purchaser.

And so, on the other hand, no right of action exists in favor of the owner against the broker for the latter's failure to exercise a degree of diligence in obtaining a purchaser which the owner might deem reasonable. Suppose that the broker actually found a purchaser who was able and willing to buy at the price asked, but that for some reason, personal or otherwise, the broker did not desire to see the intending purchaser acquire the premises. It could hardly be supposed that the owner would have a cause of action against the broker on account of the latter's failure to bring the parties together and allow a consummation of the deal. Or, in other words, no cause of action exists in favor of the owner against the broker for the failure of the latter to communicate to the former the fact that he has actually procured a probable or intending purchaser. The broker's compensation depends, not upon the amount of work he performs, but is entirely contingent upon success; and if, after reaching a point where the result of his labor means immediate and complete success, the broker is willing to waive it all and allow his labor to go for naught, he is the loser, and the owner has no recourse. So, too, under the contract which the law implies, an owner could have no cause of action against a broker, if the latter saw fit to terminate his efforts and actually did so without notice to the owner.

It must also be remembered that in this case there was no evidence that the broker was vested with any discretion in respect to the sale or any of the terms. So far as it appears from the evidence in the case, the plaintiff was employed to act as middleman in bringing the intending purchaser and the owner together. It has even been held that an agent in such a case may have a dual employment, and can claim commission from both parties, even though he has kept each party in ignorance of his employment by the other, and that the character of the employment, as to whether it involves discretion or is purely ministerial, presents a question of fact in each case. Knauss v. K. B. Co., 142 N. Y. 70, 36 N. E. 867; Norton v. Genesee Nat. Savings Ass'n, 57 App. Div. 520, 68 N. Y. Supp. 32; Siegel v. Gould, 7 Lans. 177.

This all leads to the conclusion that the plaintiff was privileged to make an effort in behalf of the owner, or not, as he saw fit, and this

either before or after he found some one who might develop into a purchaser. If such is his right, he has been guilty of no breach of his duty or fidelity to the owner, and, even without giving notice to the owner, nothing stood in the way of his making a contract with the defendant to terminate his efforts to earn commission from the owner.

The judgment and order should be reversed, and a new trial granted; costs to abide the event. All concur.