JOHN E. WYLIE, Appellant, v. THE MARINE NATIONAL BANK
OF THE CITY OF NEW YORK, Respondent.

61   415
141  519

One who has employed a broker to sell his real estate can himself sell;
and if he does so to a purchaser procured without the aid of the broker,
the latter is not entitled to his commissions.

In order to earn his commissions the broker must be the procuring cause
of the sale.   Through his agency a customer must be produced, ready
and willing to enter into a contract upon the employer's terms.

Where the broker opens negotiations, but failing to bring the customer to
the specified terms abandons them, and the employer subsequently sells
to the same person, at the price fixed, he is not liable to the broker for
his commissions.

(Argued September 1874; decided January term, 1875.)

APPEAL from judgment of the General Term of the Court
of Common Pleas, in and for the city and county of New
York, affirming a judgment entered upon an order dismissing
plaintiff's complaint upon trial.

This action was brought to recover plaintiff's commissions,
as a real estate broker, upon an alleged sale of real estate for
the defendant.

The facts appear sufficiently in the opinion.

*Silas A. Bradley* for the appellant. Plaintiff was the pro-
curing cause of the sale. (*Lloyd* v. *Matthews*, 51 N. Y.,
124; *Morgan* v. *Mason*, 4 E. D. S., 637; *Chilton* v. *Butler*,
1 id., 151; *Lyon* v. *Mitchell*, 36 N. Y., 237; *McClave* v.
*Payne*, 49 id., 561; *Lincoln* v. *McClatchie*, 36 Conn., 136;
*Murray* v. *Currie*, 7 C. & P., 584; *Wilkinson* v. *Martin*, 8
id., 1; *Briggs* v. *Rowe*, 4 Keyes, 424; 1 Abb. Dec., 189.)
The essence of the contract was the obtaining of a pur-
chaser. (*Lloyd* v. *Matthews*, 51 N. Y., 124; *Lincoln* v.
*McClatchie*, 36 Conn., 136; *Sussdorff* v. *Schmidt* [Ct. App.];
*Wilkinson* v. *Martin*, 8 C. & P., 5; *Murray* v. *Currie*, 7
id., 584.) Defendant had no right, while the negotiations
were pending, to take the matter in its own hands, effect a
sale, and refuse to pay plaintiff his commissions. (*Lloyd* v.

*Matthews*, 51 N. Y., 124; *McClave* v. *Payne*, 49 id., 561; *Lyon* v. *Mitchell*, 36 id., 237; *Chilton* v. *Butler*, 1 E. D. S., 151; *Lincoln* v. *McClatchie*, 36 Conn., 136; *Moses* v. *Bierling*, 31 N. Y., 462; *Martin* v. *Silliman*, 53 id., 615.)

*Samuel Hand* for the respondent. As plaintiff failed to show any performance on his part, the complaint was properly dismissed. (*McClave* v. *Payne*, 49 N. Y., 561; *Maracella* v. *Odell*, 3 Daly, 123; *Atwater* v. *Lockwood*, 39 Conn., 45; *Jacobs* v. *Kolff*, 2 Hilt., 134; *Moses* v. *Bierling*, 3 id., 356; *Holley* v. *Townsend*, 16 How., 125; *Harris* v. *Burtwell*, 2 Daly, 189; *Goodspeed* v. *Robinson*, 1 Hilt., 423; *Barnard* v. *Monnot*, 3 Keyes, 204; *Cushman* v. *Gore*, 3 Hill, 356.)

Earl, C. I will assume that the plaintiff was properly employed as defendant's broker for the sale of the real estate, and the only question which I deem it important to consider is, whether he earned his commissions.

There are many reported cases of suits by real estate brokers for their commissions, and the opinions of learned judges are not always in harmony with each other. But a few general rules may be regarded as settled. One who has employed a broker can himself sell the property to a purchaser whom he has procured, without any aid from the broker. (*Hungerford* v. *Hicks*, 39 Conn., 259.) Before the broker can be said to have earned his commissions, he must produce a purchaser who is ready and willing to enter into contract upon his employer's terms. (*Tombs* v. *Alexander*, 101 Mass., 255; *Barnard* v. *Mormat*, 3 Keyes, 203.) The broker must be the efficient agent or the procuring cause of the sale. The means employed by him and his efforts must result in the sale. He must find the purchaser, and the sale must proceed from his efforts acting as broker. (*McClure* v. *Paine*, 49 N. Y., 561; *Lloyd* v. *Mathews*, 51 id., 124; *Lyon* v. *Mitchell*, 36 id., 235; *Briggs* v. *Rowe*, 4 Keyes, 424; *Murray* v. *Currie*, 7 Carr. & Payne, 584; *Wilkinson* v. *Martin*, 8 id., 5.) It is not indispensable that the purchaser should be introduced

to the owner by the broker, nor that the broker should be personally acquainted with the purchaser.    But in such cases it must affirmatively appear that the purchaser was induced to apply to the owner through the means employed by the broker.    If he was the producing cause of the sale, his right to compensation will not be affected by the circumstance that the owner was ignorant of it at the time he entered into the contract with the purchaser.  (*Sussdorff* v. *Schmidt*, 55 N. Y., 320.)

As the plaintiff's complaint was dismissed at the close of his case, he must have the benefit, upon this appeal, of all the facts which his evidence tended to prove; and what are they?    About the 9th or 10th of May, 1870, he learned from defendant's cashier that its bank building was for sale, and he then called upon Mr. Sierck, of the firm of Maller, Sierck, Henkens & Co., and proposed to him to unite with him in the purchase of the building, upon speculation, for $75,000. Sierck replied to him, that if he purchased it he would want it for the business of his firm.    Plaintiff then gave up the idea of being himself interested in the purchase, and called upon Mr. Elwell, the acting president of the defendant, and informed him that he had learned that the building was for sale and that he had come as a broker, and that if he sold it he would want his commissions for the sale.    He then, or soon afterward, told him that he had a party who would pay $70,000 for the building.    Elwell replied that $80,000 was the only price for which he was authorized to sell, and he authorized the plaintiff to sell for that sum.    Plaintiff reported this interview to Sierck, and the latter authorized him to offer $75,000.    Plaintiff had several interviews with Elwell upon the subject, and obtained from him the dimensions of the lot; and finally Elwell informed him that he would call a meeting of the directors of the bank and tell him what they would do.    The directors were called together on the thirteenth day of May; and they authorized Elwell to sell the property for $80,000; and Elwell informed plaintiff on the same day that they would not sell for a less sum.    On the fourteenth of

May plaintiff took Sierck and his partner, Moller, through the building and showed it to them, and then went to Elwell and told him that his parties had made up their minds that they would pay $75,000 for the property, and offered to bring the parties to him, and Elwell declined an interview with them then for a reason stated, and said he would rather put it off until Monday. Plaintiff did not say that he would call upon Elwell again, or that his partners would meet him on Monday. Plaintiff immediately reported to Seirck & Muller that $80,000 was the least that would buy the property, that Elwell would do nothing about it that day, and that it was of no consequence or use, or something to that effect. On the same day Seirck & Muller heard that other parties were trying to purchase the property, and this made them anxious; and hearing that one Pond was a dealer with the bank, they procured him to go to Elwell and inquire and see how the matter stood. Pond reported to them that the bank had been offered $77,500 for the property, but that the price was $80,000, and that it would be sold to the first person who offered that sum. They then authorized Pond to offer that sum, and an agreement was on that day made for a purchase at that price; which was subsequently carried into effect. The plaintiff had no knowledge of the negotiations through Pond, and had nothing to do with them; and until after Pond called upon Elwell, the latter had no knowledge that Seirck & Muller were the parties who had offered $75,000 through plaintiff, or that they were desirous of purchasing the property.

Upon these facts I am of opinion that plaintiff did not earn his commissions. He was authorized to find a purchaser at $80,000, and was informed that that was the least sum the bank would take. He had tried for several days to find a purchaser at that sum; and after he was informed that that was the least sum the bank would take, he made an offer of only $75,000 on behalf of parties then unknown to Elwell. When that offer was declined he gave no intimation that he could probably get a better offer, and made no request that

the bank should hold the property for further negotiation with his parties. It is true that he requested that the parties should then be brought together; but when Elwell declined this and stated he would rather put off the meeting until Monday, there was no intimation that he would continue the negotiations, nor that he had any hopes that his parties would be willing to pay the $80,000. He was never, in fact, authorized by Seirck & Muller to offer more than $75,000; and, so far as appears in the evidence, had no reason to suppose that they would pay any more. He seems to have regarded the consummation of a contract between the parties as hopeless, for when he reported to Seirck & Muller his last interview with Elwell, and informed them that $80,000 was the least the bank would take, he said to them that it was of no consequence, or of no use. He made no arrangement or request that Seirck & Muller should raise their offer or meet Elwell on Monday. Under these circumstances the bank violated none of his rights by selling to the first party who would offer their price; and it matters not that they sold to the very party with whom plaintiff had been negotiating. He failed to find or produce a purchaser upon the terms prescribed in his employment, and the bank was under no obligation to wait any longer, that he might make further efforts.

I am, therefore, of opinion that the complaint was properly dismissed, and the judgment must be affirmed, with costs.

All concur.

Judgment affirmed.