## GEORGE R. FULTZ v. DAVID J. WIMER.

CONTRACT— *Time — No Recovery, When.* Where a real-estate agent enters into a written contract with the owner of land that his farm shall be left with him for sale for the term of two months; and that in case of a sale within the time, whether made by the agent, the land-owner, or others, the agent is to receive a commission of five per cent.; and if within the two months the agent does not produce to the owner a purchaser who is ready and willing to take the farm and pay the money, upon the terms prescribed in the special contract, the agent cannot, under the contract, recover anything for his services; although he has made efforts to sell the farm, and the person subsequently buying the farm had his attention first called thereto by the agent, and was by him introduced to the land-owner as one who wanted to buy the farm, if the delay in making the sale to the purchaser has not been caused by any negligence, fault, or fraud of the land-owner.

### *Error from Sumner District Court.*

ACTION brought before a justice of the peace of Sumner county, by *George R. Fultz* against *David J. Wimer,* to recover the sum of $65, which the plaintiff claimed was due him from the defendant for services rendered by him in selling the defendant's farm. The defendant had judgment before the justice of the peace, and the plaintiff appealed to the district court of Sumner county. On April 8, 1882, the following amended bill of particulars, in words and figures to wit, was filed, (court and title omitted:)

"Said plaintiff, for his amended bill of particulars in this action, and as a cause of action against said defendant herein, says: That defendant is indebted to plaintiff in the sum of sixty-five dollars for work and labor done and performed by plaintiff for defendant at the special instance and request of defendant, between the 18th day of June, 1881, and the 1st day of October, 1881, in and about the selling by plaintiff for defendant of the farm of defendant in Sumner county, Kansas, which farm consisted of one hundred and sixty acres of land, described as follows, to wit: The southwest quarter of section number eight, in township number thirty-three south, of range number one east, in Sumner county, Kansas; that the services of the plaintiff, and the work and labor per-

formed by him for defendant in selling said land as aforesaid, were worth the full sum of sixty-five dollars; that the sum of sixty-five dollars is now due from defendant to plaintiff for said services and is wholly unpaid, and that defendant refuses to pay said sum or any part thereof, though often requested so to do by plaintiff; that said sum became due on the first day of October, 1881."

On September 4, 1883, the defendant answered, setting up a contract in writing with the plaintiff, but denying that he owed the plaintiff anything, because he alleged that the plaintiff did not sell his land within the time specified in said contract, a copy of which is as follows:

"OFFICE OF GEORGE R. FULTZ, REAL ESTATE AGENT, WELLINGTON, KANSAS.— Description of property: Sec. 8, southwest ¼, township 33, range 1 east; No. of acres timber, —; No. of acres of prairie, 160. How watered? By good well and spring. No. of acres in cultivation, 90; No. of acres fenced, 30; No. and kind of fruit trees, 400 peach trees, 20 apple, 6 cherry, 50 grapes, and all kinds of small fruits.

"Description of dwelling house: 14x22, pine frame, painted, 3 rooms. Description of out-buildings: Pine stable, granary 7x14, pine. When possession given: By first of October. Price and terms of payment: $1,300 cash. Subject to mortgages: First, of $180, due October, 1882, at 10 per cent.; second, of $200, due January, 1885, at 9 per cent.

"How far from county seat, other towns, and direction? Six miles southeast. How far from school house? One mile. What kind of title have you, and what kind of deed can you make to a purchaser? Got patent; give warranty deed; subject to the above mortgages.

"CONTRACT.—I, David J. Wimer, of Sumner county, do hereby authorize George R. Fultz, of Wellington, Kansas, to bargain and sell the above lands at the price above set forth, and do hereby agree that I will convey, as above, said lands on sale of same and for value received. I further agree that the said land shall be left with the said George R. Fultz for sale as above for the term of two months from date hereof. If said lands, or any part thereof, are sold by myself or others during said two months, I will pay George R. Fultz his commission thereon at the following rates, viz.: On sales five hundred dollars and under, 10 per cent.; on sums from five

37 — 34 KAS.

hundred dollars to one thousand dollars, 7 per cent.; on sums from one thousand dollars to two thousand dollars, 5 per cent.

"DAVID J. WIMER.

Dated this 18th day of June, 1881."

On September 4, 1883, by consent of the parties and with leave of the court, the plaintiff amended his bill of particulars by adding thereto a prayer for relief, in the words and figures following, to wit:

"Wherefore, plaintiff asks judgment against defendant for the sum of sixty-five dollars, with interest at seven per cent. per annum from the 1st day of October, 1881, and for costs and other proper relief."

On the same day the plaintiff filed his reply to the answer of defendant, consisting of a general denial only. On September 21, 1883, trial had before the court, with a jury. After the plaintiff had introduced all his evidence, the court, over his objection, sustained a demurrer to the evidence and discharged the jury from the further consideration of the case. On September 24, 1883, the plaintiff filed his motion for a new trial, which motion, on September 26, 1883, was overruled. The court rendered judgment in favor of the defendant and against the plaintiff for costs. To the rulings and judgment the plaintiff excepted, and brings the case here.

*Herrick, George & King,* for plaintiff in error.

*Charles Willsie,* for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: The facts in this case are substantially as follows: On June 18, 1881, David J. Wimer executed and delivered to George R. Fultz a written agreement describing his farm and authorizing Fultz to sell the same for $1,300, and providing that the land should be left with Fultz for sale for two months from said June 18th. The contract contained this provision:

"If said lands, or any part thereof, are sold by myself or others during said two months, I will pay George R. Fultz

his commission thereon at the following rates, viz.: On sums of $500 and under, 10 per cent.; on sums from $500 to $1,000, 7 per cent.; on sums from $1,000 to $2,000, 5 per cent."

Fultz took C. Galli out and showed him Wimer's land and tried to sell it to him at two different times; on the second trip they found Wimer at home, and Fultz introduced Galli to him, informing him that he, Galli, wanted to buy his farm. They talked the matter over and a sale was agreed upon, the consideration being $1,300 and the putting in of some wheat. The money, however, was to be paid by September 1, 1881. Wimer was to stay upon the land until spring. Five or six days before the written contract between Wimer and Fultz was to expire, Fultz had a talk with Wimer at Wellington, and informed him that Galli wanted ten days longer to pay his money. Wimer granted it, and said he would accept the money and complete the sale if it was paid in that time. About the time the extension of ten days was up, Fultz received a letter from Galli that he could not get his money in time. Fultz then had a talk with Wimer, and wanted him to grant further time. Wimer did not grant any further time, but Fultz wrote a letter to Galli that he believed Wimer would give the extension of time asked for, and to send his money on. About September 15, 1881, Galli sent $200 to a friend of his, one John Nichols, to pay on the land. On September 24, 1881, Wimer and said Nichols, as the agent for Mr. Galli, went to the office of Fultz at Wellington, and at their instance Fultz drew up a written contract for the sale of the land from Wimer to Galli, and Wimer paid him for writing the same. The contract recited the payment of $200 cash in hand; $720 to be paid on January 2, 1882, without interest; and $380 to take up two mortgages, one due in October, 1882, and the other due in January, 1885, and also the interest on the mortgages from September 24, 1881.

Upon these facts, we do not think that the plaintiff was entitled to recover the $65, or any part thereof, which he alleged to be due him for services rendered the defendant in and about selling his farm. Therefore the trial court

committed no error in sustaining the demurrer interposed. Upon the pleadings, the plaintiff is bound by the special contract, and to entitle him to recover he must show that he complied with his part of the agreement and sold the land within two months from June 18, 1881; or that he sold the same within the time to which the contract was extended. Courts can only enforce contracts as the parties themselves made them. Under the terms of the contract, the land was to be left in Fultz's hands for sale for two months; during this time even Wimer had no right to make any sale thereof without paying Fultz his commission. If Fultz failed to make a sale of the land within two months after June 18, 1881, under the contract, he lost all his labor and expense in making the effort. It is true that Wimer extended his contract with Fultz for ten days, and if Fultz had made the sale before such extension had expired, he would have been entitled to his commission; but no sale was made within the extension. Several days after the extension granted by Wimer had expired, Nichols, as agent for Galli, saw Wimer and agreed upon terms of sale of the land, which, instead of being $1,300 cash in hand, was $200 cash down; $720 on the 2d of the following January; and the remainder to take up two mortgages as they became due. It is doubtless true that Fultz was instrumental in enabling the defendant to sell his land, but as Fultz and Wimer had entered into written stipulations as to the terms upon which Fultz was entitled to commission, these stipulations must control. Fultz failed to find or produce a purchaser ready and willing to take the farm and pay the money within the time prescribed in the written contract, or within the time that Wimer extended such contract, and Wimer was under no obligation to wait any longer that he might make further efforts. (22 Cent. L. J. 466; *Wylie v. Bank*, 61 N. Y. 415.) After the extension of the contract had expired, Wimer had the right to sell to Galli or to anyone else; and under the written contract he was not liable to pay to Fultz his commission, or any other sum, because, after the expiration of the extension of

Contract—time of its essence; no recovery.

the contract, the contract had spent its force. (*Coleman v. Meade,* 13 Bush, 358; *Charlton v. Wood,* 11 Heisk. 19.) If the delay in closing the sale between Galli and Wimer had been caused by any negligence, fault or fraud of Wimer, Fultz would be entitled to his commission, but the evidence shows nothing of this kind. Wimer acted in the best of faith and was very desirous, being over-anxious, for Fultz to produce a cash purchaser upon the terms prescribed in the written contract.

Counsel suggest that Wimer's words "led Fultz to believe that he would extend the contract" the second time, and therefore, that as he subsequently let Galli purchase the land, he should pay the commission. Although Fultz testified that Wimer led him to believe he would again extend the contract, yet he gave in his testimony the substance of his conversation with Wimer at the time he made the application for the second extension, and it is quite clear that Wimer gave no consent to any second extension. If Fultz had any belief that he would make a further extension, it grew out of the fact that he knew that Wimer was pressed for money and was anxious to make a sale, not that Wimer said or promised such further extension.

The judgment of the district court must be affirmed.

All the Justices concurring.