Bradley, J.
The action is founded on alleged fraud, and its purpose is to rescind an agreement made between the plaintiff and one Hess of the one part, and the defendant of the other part, of date July 1, 1880, whereby the defendant agreed to advance to them $15,000, and they agreed to obtain the title to a certain tract of 25,000 acres of land in the state of Kentucky, and there organize a corporate company and make the land and its appurtenances the basis of $100,000, to be represented by stock to that amount, to set apart $1,000,000 of such stock for working capital, and transfer to the defendant $150,000 of the capital stock at par value, and they also agreed to transfer to the defendant all the stock and dividends thereon (if any) of the Hop Bitters Manufacturing Company, formerly owned by Wade or Stillwell, and by Sisson Torrey and Young, and all claims of the plaintiff and Hess in the Hop Bitters Manufacturing Company. And the value of such stock of the last mentioned company was mutually agreed *556 upon and fixed at one dollar. This agreement was performed by the parties to it. And the company organized in Kentucky was known as the “Tug River Coal and Salt Company.” The plaintiff alleges that he and Hess were by fraud on the part of the defendant induced to transfer to him the stock referred to of the Hop Bitters Manufacturing Company. This was a corporation of this state doing its business at the city of Rochester.
The defendant was then, and had been for several years, its president and managing officer. The alleged fraud consisted in the concealment from them of the value of the stock, and in representing it to have no value. The plaintiff took from Hess an assignment of his interest of the subject and cause of action, and the relief in view is the rescission of the agreement of July 1, 1880, and the surrender and restoration of the money and property advanced and transferred in its performance by the parties to it as of the time of such performance by them respectively. The allegations of the complaint essential to the cause of action alleged are put in issue by the defendant’s answer. , And the plaintiff gives evidence tending to prove that he and Hess were interested in the title to 198^ shares of $100-each, of the capital stock of the Hop Bitters Company which was embraced in and transferred to the defendant pursuant to such agreement; that the defendant desired to-have its transfer made to him by the agreement, to do-which the plaintiff at first declined, and that the defendant, said to him that the stock might as well be thrown in; that it was worthless, the company was in debt and not making anything; that he owned the patent right, or the most of it, covering the formula for the preparation of the-hop hitters, and that the company was paying him a. royalty; that the plaintiff was ignorant of the financial situation of the company and its business, and was induced by such representations made by the defendant and the concealment from them by the defendant of its true condition to include the transfer of the stock as part of the-agreement, and its performance in that respect; and that-he did not discover the untruthfulness of the defendant’s, representations in that respect until in the year 1883, when he-received information that the Hop Bitters Company stock, was very valuable when the agreement was made, and had so continued; and thereupon he offered to restore to the-defendant what had been advanced by him under agreement, and demanded its rescission and surrender of the-stock which the defendant had taken by its performance, and the latter having refused was subjected to this action. Hess also says that a while prior to the time the agreement, was made the defendant represented to him that the stock. *557 in question of the Hop Bitters Company had no value, but so far as he had any interest in the stock it was held as collateral security for the indebtednes of the plaintiff to him. The evidence justified the inference that this stock was valuable at the time the agreement was made, and that the defendant, in view of his relation to the company and its business, knew it when it is said he made such representations, and that he was desirous of obtaining it because it was valuable. The mere statement or representation of value of property is usually a matter of opinion, and, as such, furnishes no foundation for an action of fraud, but when circumstances of fact are referred to by the party making such representation in .support of his statement of value, and known by him to be false, he may be chargeable with fraud. Weidner v. Phillips, 39 Hun, 1, and cases there cited.
The defendant having been the president of this company and its principal manager since 1873, might be presumed familiar with its business and financial condition upon which the value of the stock depended. And his statements made to the plaintiff as testified to by the latter, may have permitted the conclusion of an intent on his part to deceive him in that respect with a view to obtaining the stock at a price much below its value. Simar v. Canaday, 53 N. Y., 298; Chrysler v. Canaday, 90 id., 272.
And it is contended by the learned counsel for the plaintiff that the mere concealment by the defendant from the plaintiff and Hess of the value of the stock was sufficient to charge him with fraud for the purposes of the relief, although no other means m ere used by him to mislead them, because he had to them the relation of trustee. We are not prepared to adopt that proposition to the extent stated. As a director and officer of the corporation, he was a trustee of it, and so far represented the interests of the stockholders in respect to the corporate property and rights of the company, and in that respect he had the disabilities of a trustee, and could not operate or deal in its property for his own advantage, or its or their prejudice, but the stock was not the property of the corporation, and in dealing in that with the stockholders either by purchase or sale of the stock, which had been duly issued, a director as such is not acting in a fiduciary character as trustee, or within the duties of such relation, and the rule governing and qualifying the effect of transactions between a trustee and cestui que trust does not necessarily apply. And when the expression is used by the writers, text and judicial, to the effect that the directors of a corporation are trustees of the stocxholders, it has reference only to the relations of the former to it, and the duties which that relation imposes *558 upon them for the common benefit of the stockholders. There is therefore no legal embarrassment in the way of the purchase by a director of stock from a person holding it, of the corporation with which such relations exist. Although in view of his superior means of knowledge of its. value, slight circumstances showing a purpose, and which might have the effect to mislead the seller, resulting in a purchase much below value, might afford occasion for redress.
While a view might be taken of the evidence which would if adopted lead to the conclusion that the plaintiff was entitled to relief, it does not require that result. The representations and concealment claimed to constitute fraud rest mainly in the testimony of the plaintiff, and by reason of such relation to the action, the question of the credibility of his evidence was properly for the determination of the trial court. Dean v. Van Nostrand, 23 N. Y. W. Dig., 97. It appears that the Hop Bitters Company was-organized through the instrumentality of the plaintiff in 1873, and that he was its first president; and there is evidence tending to prove that he was somewhat familiar with the manner and cost of manufacturing the bitters; that, after the defendant became the president of the company the plaintiff was frequently at its place of business, and had the opportunity which he to some extent made available, by observation and inquiry, to ascertain something of the extent of the business done prior and up to the time of making the agreement in question, and that he had some-appreciation of the then and prospective financial condition of the company. And further, there is upon the evidence an opportunity for inference that the leading thing which he had in view at the time of the negotiation for and making the agreement was the Kentucky project with the expectation of large financial reults from the contemplated corporate organization there, and that its supposed importance was the inducement to surrender his interest in the stock in question to enable him to obtain the advance desired from the defendant for its accomplishment, rather than any representation or concealment by the latter of its value.
The conclusion was also permitted that the plaintiff s, title to the stock, or some of it, was not free from complication. None of it was held by him, or apparently in his name as owner. The Wade ninety-eight shares were represented by a certificate to Stowell, but was evidently held subject to the order of and right of transfer by Hess, to secure a debt owing him by the plaintiff. And it seems that the defendant asserted that the original purchase was made for him by the plaintiff of Wade, but the form of *559 the transfer imports to the contrary. The Sisson, Torrey and Smith ninety-eight and a half shares the defendant claimed to own, and none of those other parties held any certificates for them. Those shares, it seems, had been the subject of actions by those parties against the defendant in 1879, and the latter was represented in the actions by the plaintiff as his attorney, which actions the plaintiff says were terminated by his purchase from those plaintiffs of their interests in the stock they were there seeking to recover of the defendant. These are only circumstances which might to a greater or less extent be considered as bearing merely upon the question of the inducement which the plaintiff had to part with his interest to the defendant in the stock. In respect to the plaintiff’s view of the value of the stock, it also appears that prior to the purchase by him of the Wade stock, in 1879, Hess had security for the debt due him upon some real estate, and was requested- to convey that for the purpose of purchasing of Wade such stock, and to take that as such security, and with a view to that, it appears that the plaintiff advised him that the stock ought to be worth something, and was better than the security he then had. And the evidence tends to show that he was quite diligent in 1879 in his effort to get the stock which he claims he owned at the time of the agreement by which he and Hess undertook to make the transfer to the defendant of the Wade stock and “the pretended claim to stock formerly claimed to be owned by John Sis-son, Samuel H. Torrey and Young W. Smith.”
It is unnecessary to make further reference to the circumstances which the evidence tends to prove in support of the contention of the respective parties. The conclusion is that it presented a question of fact for the determination of the trial court whether or not the plaintiff was entitled to relief.
It is contended on the part of the plaintiff, and we are inclined to think, that the case was not so treated by the court, but that it was there held as matter of law that whatever view which could be taken of the evidence, its weight or credibility, it was insufficient to support a recovery. There was no evidence given in the defense. When the evidence on the part of the plaintiff closed, the defendant moved for dismissal of the complaint upon the merits. The motion was granted and the plaintiff excepted. And thereupon the written decision of the court was made, finding, “That the allegations of fraud, fraudulent misrepresentations and fraudulent concealments alleged in the complaint and those that the plaintiff or said Hess was deceived and defrauded thereby are unsupported by the evidence,” and directing judgment of dismissal of *560 the complaint on the merits. The fact that the motion to dismiss was made and disposed of as it was, and the form given to the finding before referred to, tend to show that the view of the trial court was that there was no question of fact arising upon the evidence for consideration, which -apparent situation is not overcome by the conclusion of dismissal on the merits. Wylie v. Marine Bank, 61 N. Y., 415-417.
If the view taken of the evidence is correct, the question for the court was one of fact, and it should have been treated and disposed of as such rather than as a question of law. Casten v. Decker, 3 N. Y. State Rep., 429. And for that reason the judgment should be reversed and a new trial granted, costs to abide the event.
Smith, P. J., concurs; Haight, J., not voting.