[L. A. No. 2225. Department Two.—January 19, 1909.]

## GEORGE L. BROWN, Appellant, v. GEORGE MASON, Respondent.

BROKERS—LIMITED OPTION—FAILURE TO FIND PURCHASER READY AND WILLING TO PURCHASE — INTRODUCTION OF FINAL PURCHASER TO OWNER.—A broker is not entitled to recover commissions on a sale finally effected by the owner with one merely introduced by the broker to the owner, who was not ready and willing to contract with the owner on the terms of sale insisted upon by the owner, within the life of the option or any extension thereof, when it appears that the delay in finally effecting the sale was not caused by the negligence, fault, or fraud of the owner, but that long negotiations with other parties finally failed, before the owner at last effected a sale with the person so introduced, on much less favorable terms than those before insisted upon.

ID.—BROKER MUST BE EFFICIENT CAUSE OF SALE.—Before the broker can be deemed to have earned his commission, it must appear that during the written option allowed by the owner, or some extension or waiver thereof by the owner, he found a purchaser ready and willing to purchase, and became the efficient agent or procuring cause of the sale finally effected.

ID.—BROKER SUBJECT TO RISKS OF WRITTEN EMPLOYMENT.—The broker took the risks of his written employment, and was subject to the results of failure or success under the provisions of his contract of agency.

ID.—IMPLIED PROMISE NOT A BASIS OF RECOVERY.—When the final purchaser was introduced by the broker, while acting under the written option, it cannot be urged that he was working under a written contract if he succeeded in filling its terms, and under an implied contract if he could not accomplish that result. No implied promise arises as a basis of recovery of a commission merely because at a time subsequent to the life of the written contract the property is sold to a person introduced by the broker, who himself effected no sale to such person.

APPEAL from a judgment of the Superior Court of Los Angeles County. B. F. Bledsoe, Judge presiding.

The facts are stated in the opinion of the court.

Mastick & Partridge, and Edward F. Treadwell, for Appellant.

Hanson & Heath, and Edwin A. Meserve, for Respondent.

MELVIN, J.—This was an action for the recovery of fifteen thousand dollars, as commissions which plaintiff asserted were due him for services as a broker in selling for defendant a note and mortgage for one hundred and fifty thousand dollars, and all of the stock of the Pokegama Sugar Pine Lumber Company, a corporation, owning a large tract of timber land in the state of Oregon. Judgment was given for defendant, and from it plaintiff appeals.

The complaint contained three counts, the first pleading an employment of plaintiff by defendant to make a sale of the stock, note, and mortgage, and a performance of services under such employment "reasonably worth the sum of $15,000"; the second is an ordinary count on a *quantum meruit;* and the third is a common count in *indebitatus assumpsit.*

It appears that in 1904 the defendant Mason owned the stock of the Pokegama Sugar Pine Lumber Company, and a mortgage for one hundred and fifty thousand dollars upon the Klamath Lake Railroad. This railroad was owned principally by one Hervey Lindley, who was very anxious to make a sale of the road in conjunction with defendant's land. Lindley sent Brown to Mason in November, 1904. An agreement

was obtained whereby defendant promised to sell his stock and mortgage for three hundred and ninety thousand dollars, of which ninety thousand dollars was to be paid at once and the balance in three yearly payments of one hundred thousand dollars each. This option was to remain in force until January 1, 1905. Mason also signed a promise to pay Brown fifteen thousand dollars if the latter should succeed in closing the sale in accordance with the terms of the option. At the request of Brown the option was afterwards extended to the tenth day of January, 1905. On the last-mentioned date the appellant took one George L. Long, a representative of the Weyerhaeuser Timber Company, to Los Angeles, and introduced him to respondent. Mason refused to give an extension of the option, but gave Long a new option on the same property for four hundred thousand dollars, good until February 11, 1905. He also agreed to pay Brown fifteen thousand dollars if this sale should be made. At the expiration of this second option an unsuccessful attempt was made by Long to secure an extension. Negotiations between Long and Mason had apparently terminated. On March 9, 1905, the respondent wrote to appellant, telling him that the transaction was at an end. On April 11, 1905, appellant Brown, wrote to Mason and spoke of the matter of his compensation. He received a reply, dated April 12th, in which the writer used the following language: "We have now taken the matter up directly with the Cooks and made a compromise deal at a greatly reduced price, which is to be net to us. I utterly fail to see how you are connected with this deal at all, certainly you were not for us." The Cooks mentioned were two brothers who had a judgment against the Pokegama company and Hervey Lindley. They secured a contract of sale from Mason for this property at three hundred and twenty-five thousand dollars, but the negotiations failed and Mason rescinded this agreement in May, 1905. The court below found that this contract was secured at the instigation of Long, but that Mason was ignorant of that fact. During the summer of 1905 Long made an unsuccessful endeavor to secure the property and then dropped negotiations until November, when he went to Los Angeles, secured an option on the property and purchased it finally in December, 1905, for the sum of three hundred thousand dollars.

That plaintiff's legitimate interest in the matter of the sale of this property was limited to his contract of employment there can be no doubt. When an agent procures such an agreement in which time is of the essence of the transaction, he is bound by its terms. There is no implied promise arising of necessity from the relation existing between a prospective vendor and his agent that the former will pay a commission if, at a time subsequent to the life of the written contract, the property is sold to the person introduced by the agent. The two essentials to the broker's success under a written appointment such as Brown obtained from Mason are, 1. That he should produce and introduce to the seller a customer ready, able, and willing to take the property upon the terms stipulated; and, 2. That this should be done within the time limit of the option. If the purchaser is willing to take the property on different terms and the variance is waived by the vendor, the broker may still obtain his commission; or if, having produced a suitable purchaser but not within the time limit, owing to a delay caused by his principal, the broker is entitled to his commission. Wanting any of these exceptions, however, a broker is strictly held to the terms of his contract. (See Mechem on Agency, secs. 965, 966.) The rule is well expressed in *Zeimer* v. *Antisell*, 75 Cal. 509, [17 Pac. 642].

"And before a broker can be said to have earned his commission, it must also be shown that he produced a purchaser, who was ready and willing to make the purchase on terms satisfactory to his employer *and that he was the efficient agent or procuring cause of the sale.* (*McGavock* v. *Woodlief*, 20 How. 221; *Wylie* v. *Marine National Bank*, 61 N. Y. 415.)

"The duty assumed by the broker is to bring the minds of the buyer and seller to an agreement for a sale, and the price and terms on which it is to be made, and until this is done his right to commissions does not accrue. (*Sibbald* v. *Bethlehem Iron Co.*, 83 N. Y. 382, [38 Am. Rep. 441].)

"It must further appear that the broker performed the duty assumed by him *within the time limited in his contract,* or within such extension of time as may have been granted by his employer. If he fail to do that he is not entitled to the commission, even though he made efforts to sell the property, *and first called to it the attention of the party who subsequently made the purchase,* unless the delay was caused by

the negligence, fault or fraud of the owner. (*Fultz* v. *Wimer,* 34 Kan. 576, [9 Pac. 316]; *Wilson* v. *Sturgis,* 71 Cal. 226, [16 Pac. 772].)"

The case of *Zeimer* v. *Antisell,* 75 Cal. 509, [17 Pac. 642], was cited with approval in *Ropes* v. *Rosenfeld's Sons,* 145 Cal. 679, [79 Pac. 354], where this language is used:

"The rule laid down in *Zeimer* v. *Antisell,* 75 Cal. 509, [17 Pac. 642], has never been questioned or overruled by this court, so far as we know, and must control this question."

This case which we are now considering is quite similar to that of *Fultz* v. *Wimer,* 34 Kan. 576, [9 Pac. 316]. In that case a prospective purchaser introduced by the plaintiff to his principal within the two months mentioned in their agreement of agency, promised to take the property on the terms offered, but did not do so. After the time expired, other negotiations were opened, and finally the property was purchased by the person whom plaintiff had introduced to defendant. The court in that case thus expresses the law:

"It is doubtless true that Fultz was instrumental in enabling the defendant to sell his land; but as Fultz and Wimer had entered into written stipulations as to the terms upon which Fultz was entitled to commission, these stipulations must control. Fultz failed to find or produce a purchaser ready and willing to take the farm and pay the money within the time prescribed in the written contract or within the time that Wimer extended such contract, and Wimer was under no obligation to wait any longer that he might make further efforts. (22 Cent. Law J., 466; *Wylie* v. *Marine etc. Bank,* 61 N. Y. 415.) After the extension of the contract had expired, Wimer had the right to sell to Galli or to any one else; and under the written contract, he was not liable to pay to Fultz his commission, or any other sum, because, after the expiration of the extension of the contract, the contract had spent its force. (*Coleman* v. *Meade,* 13 Bush. 358; *Charlton* v. *Wood,* 11 Heisk. 19.) If the delay in closing the sale between Galli and Wimer had been caused by any negligence, fault or fraud of Wimer, Fultz would be entitled to his commission; but the evidence shows nothing of this kind. Wimer acted in the best of faith, and was very desirous, being over-anxious, for Fultz to produce a cash purchaser upon the terms prescribed in the written contract."

Appellant's counsel are apparently of opinion that the case just cited is not in consonance with the better authorities in this country, and that it is in conflict with the doctrines expressed in *Wilson* v. *Sturgis,* 71 Cal. 226, [16 Pac. 772], but as was indicated by the learned judge who tried this case in the superior court, *Wilson* v. *Sturgis,* 71 Cal. 226, [16 Pac. 772], presents a different state of facts. He said: "In that case the facts show that *within the time prescribed* a purchaser agreed to take the property, and paid part of the purchase price down; within a day or two after the termination of the time prescribed, defendant all the while retaining the purchase price first paid, the sale was actually consummated. Moreover, as the evidence in the case shows, defendant was endeavoring to defraud the plaintiff of his commission."

It is to be remembered, also, that in *Ropes* v. *Rosenfeld's Sons,* 145 Cal. 671, [79 Pac. 354], the case of *Fultz* v. *Wimer,* 34 Kan. 576, [9 Pac. 316], is affirmed. Appellant's counsel in their brief state their position as follows: "It will be observed that the complaint does not count upon the performance of the express contract, or upon the obtaining of a purchaser who was ready and able to purchase on the terms specified or within the time limited, but upon the implied obligation to pay a reasonable compensation which we claim the law raises against one who sells for a less sum to a purchaser obtained by the agent." But at the time of the introduction of Long to Mason by Brown, the last-named individual assumed to act under the written agreement. This was shown by his efforts to have the time of the option extended and to get a new brokerage contract for himself. It cannot be reasonably said that he was working under an express written contract if he could succeed in fulfilling its terms, and under an implied contract if he could not accomplish that desired result. He took the risks of his employment and was subject to the results of failure or success under the provisions of his contract of agency.

It follows that the judgment must be affirmed and it is so ordered.

Henshaw, J., and Lorigan, J., concurred.

Hearing in Bank denied.