[Civ. No. 1729. Third Appellate District.—October 25, 1917.]

## MAURICE F. RYAN, Appellant, v. S. O. WALKER, Respondent.

AGENCY—REALTY BROKER—STATUTE OF FRAUDS.—An unwritten agreement authorizing or employing an agent or a broker to purchase or sell real estate is void under section 1624 of the Civil Code.

ID.—PLEADING—WORDS AND PHRASES—"MIDDLEMAN."—An allegation that a real estate broker was a "middleman" and not an agent does not affect the contention that an agreement employing a broker is void when not in writing.

ID.—SEVERABLE CONTRACT—REAL AND PERSONAL PROPERTY.—Where a broker's contract relates to both real and personal property, the statute of frauds is not applicable so far as the personal property is concerned.

ID.—PROMISE TO ANSWER FOR DEFAULT OF ANOTHER.—Where, after a broker employed by the owner of property to procure a purchaser had obtained a prospective purchaser, the broker's contract with the owner was rescinded by mutual consent and thereupon the prospective purchaser promised the broker to pay him a certain commission in consideration of obtaining the property at a lower price, there was no necessary connection between this contract and the one

with the owner, and it was not a promise to answer for the default of the owner.

ID.—PLEADINGS—DEMURRER—IMPROPER JOINDER OF CAUSES OF ACTION.— A complaint which unites a cause of action for a commission growing out of the transfer of real property with another for a commission growing out of the transfer of personal property is demurrable under subdivision 5 of section 430 of the Code of Civil Procedure.

ID.—VOID CONTRACT—WANT OF CONSIDERATION.—It is held in this case from the facts as stated in the complaint that the alleged contract by a purchaser to pay a broker a commission on the purchase of personal property was void for want of consideration.

APPEAL from a judgment rendered on demurrer by the Superior Court of Tulare County. W. B. Wallace, Judge.

The facts are stated in the opinion of the court.

T. E. Clark, for Appellant.

Maurice E. Power, for Respondent.

BURNETT, J.—The appeal is from a judgment of dismissal after a demurrer to the second amended complaint had been sustained. The complaint itself is rather a curious piece of composition. It abounds in evidentiary and redundant matter. It comprises over twelve pages of the transcript, whereas every material allegation could have been expressed in one-fourth that space. It is unfortunate that the pleader did not carefully consult the case of *Green* v. *Palmer,* 15 Cal. 412, [76 Am. Dec. 492], before drawing his complaint. If he had done so he probably would have saved himself much trouble and the court considerable anxiety in the effort to determine the theory of his cause of action. It appears to be an action for the recovery of a commission for the sale of real and personal property. It appears without question that there was an oral contract entered into with the owner of the property in the beginning. The contract seems thereafter to have been canceled, and a new contract made with the defendant, the respondent herein. To indicate the nature of the said contract it is probably sufficient to quote the seventh paragraph of the second amended complaint, as follows:

"That plaintiff thereupon called the attention of said Mr. Leebon to the fact that the defendant was a customer whom he had produced, pursuant to the agreement of Mr. Leebon

to compensate him for his services, and that he expected compensation at the rate of 5% on the sale price if Mr. Leebon sold to defendant; Mr. Leebon then informed plaintiff that if he should sell the property for less than $80,000.00 he could not pay plaintiff 5% on the same; whereupon plaintiff remarked, 'This man is my customer, if you sell to him, I will expect you to pay me as you agreed to do'; in reply Mr. Leebon said: 'If I am obliged to pay you 5% on a less sum than $80,000.00 we will just call the trade off,' and he then and there turned to walk away; defendant then spoke to Mr. Leebon and said: 'Hold on, Mr. Leebon, if I buy this property, I will pay Mr. Ryan 5% on whatever amount I agree to pay for it,' whereupon plaintiff asked the defendant: 'Is that right?' and the defendant answered, 'Yes, I will pay you myself'; defendant and Mr. Leebon then engaged in some further conversation, but did not at that time agree upon terms, and no deal was consummated that day, between defendant and Mr. Leebon, and plaintiff and defendant returned to Visalia.''

It thus appears, in connection with the fourth and fifth paragraphs of the complaint, that the owner of the property undertook to pay the agent a commission for finding a purchaser, and in pursuance of said agreement plaintiff did find a purchaser in the person of the defendant. There can scarcely be any doubt that plaintiff by introducing defendant to the owner performed all that the law required of him to entitle him to his commission, even though the owner saw fit subsequently to sell the property or a portion of it at a reduced price. (*Mattingly* v. *Pennie*, 105 Cal. 514, [45 Am. St. Rep. 87, 39 Pac. 200]; *Brown* v. *Mason*, 155 Cal. 155, [21 L. R. A. (N. S.) 328, 99 Pac. 867].) It is the contention, however, of the respondent here, as it was in the court below, that since the alleged promise was verbal, it is brought within the provisions of subdivision 6 of section 1624 of the Civil Code, requiring agreements authorizing or employing an agent or broker to purchase or sell real estate for compensation or a commission to be in writing. It is therefore contended, and it was so held by the trial court, that plaintiff counts upon a void promise. A large number of cases is cited illustrating the application of this provision of the code. It is not necessary to call attention to all of them, as the rule is very clearly stated in the code itself, and there can be no question about it in the proper case. We content ourselves with referring

to *Dolan* v. *O'Toole,* 129 Cal. 488, [62 Pac. 92]; *Jamison* v. *Hyde,* 141 Cal. 109, [74 Pac. 695]; *Hicks* v. *Post,* 154 Cal. 22, [96 Pac. 878].

Nor is it any answer to this contention that plaintiff was a "middleman and not an agent," as claimed by appellant. His complaint alleges that he was a real estate broker, and it is settled that a broker is a middleman whose business is to bring seller and buyer together. He need have nothing to do with negotiating the bargain. (19 Cyc. 186; *Brown* v. *Mason,* 155 Cal. 155, [21 L. R. A. (N. S.) 328, 99 Pac. 867].) No such distinction as claimed by appellant is recognized in this state. As to this point certain cases are cited from other jurisdictions, but they are under different statutes from that prevailing in this jurisdiction. Among the cases cited is *Dietch* v. *Feder,* 86 N. Y. Supp. 802. Therein it appears that the owner would not sell below a certain price if compelled to pay his agent a one per cent commission, but that he was willing to sell for a less price if the buyer would bind himself to pay that commission. It appears that there was a definite agreement between the owner, buyer, and agent, by which the owner was released from his obligation to the agent, and the buyer in consideration of obtaining the property at a reduced price, agreed to pay the agent his commission. The sole point decided in the case was that the verdict of the jury must stand where the evidence is conflicting. A somewhat different question was presented in the case of *Siegle* v. *Rosenzweig,* 129 App. Div. 547, [114 N. Y. Supp. 179], it appearing therein that the buyer requested the agent to do nothing and to allow him to deal directly with the owner, the buyer promising the agent a commission for his inaction. The vital point in the case was apparently whether the transaction was based upon an immoral consideration, and the court held that it was not. Some of the other decisions are to the effect that contracts may be oral if not required by statute to be in writing. Of course, as to this there can be no controversy. Nor can there be any question that a broker may in some instances require commissions from both parties.

We think that it can be safely said that as far as the action concerns the agreement to pay a commission for the sale of the real estate, it is within the provisions of said statute of frauds, and being invalid, it cannot be enforced, and this applies to the second agreement as well as the first. The complaint

shows, however, that the transaction related not only to real estate but also to personal property, and we see no good reason against holding that it is therefore severable, and such statute is not applicable as far as the personal property is concerned, such contract not being required to be in writing. As to this latter property, it may be said, further, that there is an allegation in the complaint that ''plaintiff was, since the commencement of this action informed and he now believes, and he, therefore, upon information and belief, alleges that defendant purchased at the time of the purchase of the said land, all of the aforesaid personal property that was upon said premises and that was embraced in said Leebon's original proposition to sell, and which was separately valued, and by defendant purchased from said Leebon at the price of fifteen thousand dollars.''

It is further contended by respondent that Walker's statement as set out in the seventh paragraph aforesaid was a promise to answer for the debt of Leebon, and therefore void under the provisions of subdivision 2 of said section 1624, pronouncing invalid ''a special promise to answer for the debt, default, or miscarriage of another, except in the cases provided for in section twenty-seven hundred and ninety-four.'' We are not inclined to agree with respondent in this connection. We think it may fairly be inferred from the language of the complaint that the agreement between plaintiff and the defendant constituted an independent contract. It appears, in other words, that plaintiff had first entered into a contract with the owner of the property for a commission of five per cent, but after producing a purchaser, said contract seems to have been rescinded by mutual consent, whereupon defendant, in consideration of obtaining the property at a lower price, promised to pay plaintiff a commission of five per cent upon what he should be required to pay for said real estate and personalty. We can perceive no necessary connection between this contract and the one made with the owner. Strictly speaking, it is not a promise to answer for the default of the owner, nor is it a novation.

In the demurrer, which was both general and special, it is claimed that the said complaint is uncertain, in that it cannot be ascertained whether the cause of action grows out of a claim for commission for the sale of real property or the sale of personal property, or what portion of the said two

thousand seven hundred dollars the commission is claimed for one or for the other. Furthermore, that it cannot be ascertained whether defendant ever promised to pay any commission or any sum whatever for the sale of the personal property, and that it cannot be ascertained whether or not defendant promised or agreed to pay any commission after or before any services were performed, if any were performed, by the plaintiff. These grounds of demurrer may be considered together. From paragraph 7 of the complaint, considered in connection with what precedes, the conclusion would follow that the parties had in view both the real and personal property, but in paragraph 8 we find this allegation:

"That on the return trip to Visalia on the occasion last aforesaid, defendant and plaintiff talked over the possibility of handling the property and defendant remarked to plaintiff, 'You are now interested in the deal, 5% on whatever price I pay for the property, and unless I can get it at a price a great deal below what Mr. Leebon now holds it at, I cannot handle it, therefore, if you make anything out of the deal you should assist me in buying the property as low as possible and if I could get the ranch for a fair price, and leave the personal property out, I think I could handle it, but I don't want to get mixed up with the chattel mortgage on the personal property.' "

This would seem to qualify the promise as to the personal property and confine it to the realty. It does at least indicate an intention on the part of respondent that appellant should do nothing toward the purchase of the personalty, and we find that appellant acted upon the statement and actually performed no service for respondent in that particular.

As to the point in reference to the apportionment of the two thousand seven hundred dollars, it does appear, as we have seen, that the personal property was sold for the sum of fifteen thousand dollars, and it is a mere matter of computation to determine how much of the commission was claimed for that sale. Another ground of special demurrer was that "two causes of action are united in said complaint, the one for the commission growing out of the transfer of real property and the other for the commission growing out of the transfer of personal property, and said causes of action are not separately stated." It seems clear that this position is well taken, and that for this reason the complaint was

demurrable under subdivision 5 of section 430 of the Code of Civil Procedure. The other criticism, moreover, suggested by the general demurrer of respondent, seems to involve a fatal defect in the complaint. In considering it we must, of course, keep in view the fact that the contract with respondent was entirely distinct from the one made with the owner, and that the real property must be eliminated from consideration. Then the question arises whether plaintiff earned any commission, as against the defendant, for the sale of the personal property. If so, he must have performed some service for the defendant in connection with said sale. It is not sufficient that he may have earned his commission as against the owner by bringing the vendor and vendee together, since that service related to the first contract and had been completed when the second contract was made with the purchaser, and it would seem, on familiar principles, that the plaintiff, in order to earn his commission on the sale of said personalty, must have performed some service to effect said sale, but we look in vain through the complaint to find any such allegation. It does not appear that plaintiff had any further communication whatever with the owner in reference to said personalty, nor that he made any effort to bring the parties together in relation to it. It is true he performed some service in regard to the real property, but that cannot be considered, as before stated.

In fact, immediately after the agreement relied upon by plaintiff, he was informed by defendant, as we have seen, that he, the latter, did not desire to purchase said personalty, and it seems defendant purchased it without the knowledge of plaintiff. We can see no principle, therefore, upon which it can be held that plaintiff can recover from defendant for said sale. The promise to pay, if made, was entirely without consideration, and cannot be enforced. It amounts to no more than this: Defendant says to plaintiff: "If I buy the whole of this property for less than eighty thousand dollars, I will pay you a five per cent commission on the purchase price." Defendant did thereafter purchase the personalty for fifteen thousand dollars without any aid whatever from plaintiff. Indeed, as we have seen, it was understood that plaintiff was to perform no service in that connection.

There was no benefit conferred upon defendant, no prejudice suffered by plaintiff in consequence of said promise, nor

was it intended that there should be. The promise, therefore, was without consideration, and void as far as the personal property was concerned. Or the promise may be considered as implying that the services would be performed, and since there was no performance, to its entire extent the promise failed.

We think the judgment should be affirmed, and it is so ordered.

Chipman, P. J., and Hart, J., concurred.