[Civ. No. 5402.  First Appellate District, Division Two.—March 10, 1926.]

E. A. HOWARD, Respondent, v. G. W. BURROW, Appellant.

[1] BROKER'S COMMISSIONS — LEASE OF PROPERTY — CONTRACTS — PERFORMANCE.—A broker could not recover a commission under a contract whereby he was to obtain a lessee for certain property within a specified time, where an agreement (assuming that it was an agreement) between the owner and a prospective tenant (who was introduced to the owner by the broker) to enter into a lease of the property was not reached until after the expiration of the time specified in the broker's contract, and the failure to reach an earlier agreement was not caused by any negligence, fault, or fraud on the part of said owner.

[2] ID. — AGREEMENT TO ENTER INTO LEASE — INSUFFICIENCY OF. — The alleged agreement between the owner and prospective tenant was incomplete and not enforceable as an executory contract to enter into a lease, where such writing provided that plans and specifications for alterations and improvements were to be prepared by, and to the satisfaction of, the tenant, and were also to be approved by the owner, thus showing that there was a material element in the writing in which the minds of the parties had not met.

(1) 9 C. J., p. 606, n. 83, p. 607, n. 88, p. 608, n. 89.  (2) 13 C. J., p. 290, n. 9, 11; 35 C. J., p. 1200, n. 57, p. 1201, n. 66, 71 New.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. James M. Troutt, Judge. Reversed.

1. See 4 Cal. Jur. 590; 4 R. C. L. 305.

The facts are stated in the opinion of the court.

Earl D. White and Gus L. Baraty for Appellant.

Clarence E. Todd for Respondent.

STURTEVANT, J.—The plaintiff commenced an action against the defendant for compensation claimed to have been earned by him as a broker. The defendant appeared and filed an answer and a cross-complaint. The plaintiff answered the cross-complaint and a trial was had on the issues presented by those pleadings. As the trial court was sitting without a jury, it made findings. Those findings were in favor of the plaintiff and the defendant has appealed and has brought up a bill of exceptions.

After a short conversation between them the defendant wrote out, signed, and delivered to the plaintiff a writing as follows:

"Campbell Cal

"Mar 28–1924

"On consideration of securing the services of E. A. Howard. And efforts on his part. And at his expense to obtain a tenant on a five year lease. Subject to my approval. On property located at 3020 Broadway, and Orchart & Brook St Oakland Cal I agree to pay the regular commission as per the Realty Board of Oakland for services rendered. This contract to remain in force for ten days from date

(Signed) "G. W. BURROW
"R. 1–Box 278
"Campbell Cal."

A few days later the plaintiff took Mr. Campe, as president and general manager of the Campe Automobile Company to the defendant's farm near Campbell and introduced him. A long conversation was held between the defendant and Mr. Campe regarding a lease from the defendant to the Campe Automobile Company. However, no agreement was reached between the parties at that time nor on or prior to April 7, 1924, the end of the term of the plaintiff's contract.

In the conversation last mentioned it developed that the Campe Automobile Company wanted a lease on the property

of the defendant but on the condition that extensive altera-
tions and improvements should be made. The defendant
did not object to alterations being made, but insisted that if
they were made the work should be done so that future
tenants would not find them useless or objectionable and that
they should be installed in such manner as not to mar the
appearance of the building. It was known that the im-
provements would cost a considerable sum and neither party
was willing to bear the whole cost. The owner asked $700
rental per month and Mr. Campe was not willing to pay that
sum and pay for the improvements.

A short time later, April 9, 1924, the parties met at the
office of Mr. Campe in Oakland. Mr. Howard, Mr. Burrow,
Mr. Campe, and Mr. Campe's local manager, Mr. Flint,
were present. Down to this date there is not a word in the
record to the effect that the failure to reach an agreement
was caused by "any negligence, fault, or fraud" of Mr.
Burrow. It was not until several days later that any plans
and specifications of the alterations and improvements were
drawn up or presented. However, at this meeting a long
conversation was held and later a writing was executed in
words and figures as follows:

"We agree to lease through the agency of E. A. Howard,
the following described property, to-wit:—Lots 79–80 and 82
and improvements of Academy Homestead; Situate in Oak-
land, County of Alameda, State of California, on the follow-
ing terms and conditions. That the rental of said premises
shall be $600.00 per month for a period of five years from
August 1st 1924 and that the lessor agrees to give the lessee
an option of a further five years, namely from August 1st
1929 till August 1st 1934, at a monthly rental of $700.00
per month. This option to be executed in the event of it
being desired by the lessee ninety (90) days previous to the
expiration of the lease and the option to be executed on the
same terms and conditions, with the exception of the rental,
as enumerated above, as the original lease.

"The lessor agrees to spend in the improvements and
alterations of the interior of the premises, in accordance with
the plans and specifications submitted to and approved by
him in the sum of $2500.00. This is to be exclusive of the
repairing of the roof and the painting of the exterior of the

building. The lessee agrees to spend a sum of $2500.00 or more in the improvement and alteration of said premises.

"The form of lease to be executed is to contain all of the ordinary provisions and is to be fully approved by both parties hereto.

"GEORGE CAMPE INCORPORATED, Lessee,

"GEORGE CAMPE President

"Witness: E. A. HOWARD

"G. M. FLINT

"Accepted: LESSOR G. W. BURROW

"Dated at Oakland, California, this 9th day of April, 1924."

[1] The foregoing paper is the only instance in which the parties are claimed to have reached an agreement. Mr. Campe, a witness called by the respondent, so testified and he was not contradicted by any other witness. If we assume, for the purpose of this case, that such is the fact and that said paper was an agreement, it will be noted that that paper was executed two days after the respondent's contract had expired. Such being the fact the respondent could not recover under his contract. Very soon after *Fultz* v. *Wimer*, 34 Kan. 576 [9 Pac. 316], was decided, it was cited by the supreme court of this state (*Wilson* v. *Sturgis*, 71 Cal. 226, 229 [16 Pac. 772]). Later it was cited and followed in *Zeimer* v. *Antisell*, 75 Cal. 509, 512 [17 Pac. 642]. It has been frequently cited and followed since that time. (*Brown* v. *Mason*, 155 Cal. 155, 159 [21 L. R. A. (N. S.) 328, 99 Pac. 867].) Still, assuming that the writing of April 9, 1924, constituted a valid enforceable contract, of what benefit to respondent is the fact? In the case of *Fultz* v. *Wimer*, 34 Kan. 576, at page 580 [9 Pac. 316], the supreme court of Kansas answered just that question. Its language is quoted with approval in *Brown* v. *Mason*, 155 Cal. 155, at page 159 [99 Pac. 867, 869], as follows: "It is doubtless true that Fultz was instrumental in enabling the defendant to sell his land; but as Fultz and Wimer had entered into written stipulations as to the terms upon which Fultz was entitled to commission, these stipulations must control. Fultz failed to find or produce a purchaser ready and willing to take the farm and pay the money within the time prescribed in the written contract or within the time that Wimer extended such contract, and Wimer was under no obligation

to wait any longer that he might make further efforts. (22 Cent. Law J., 466; *Wylie* v. *Marine etc. Bank,* 61 N. Y. 415.) After the extension of the contract had expired, Wimer had the right to sell to Galli or to anyone else; and under the written contract, he was not liable to pay to Fultz his commission, or any other sum, because, after the expiration of the extension of the contract, the contract had spent its force. (*Coleman* v. *Meade,* 13 Bush (Ky.), 358; *Charlton* v. *Wood,* 11 Heisk. (Ky.) 19.) If the delay in closing the sale between Galli and Wimer had been caused by any negligence, fault or fraud of Wimer, Fultz would be entitled to his commission; but the evidence shows nothing of this kind. Wimer acted in the best of faith, and was very desirous, being over-anxious, for Fultz to produce a cash purchaser upon the terms prescribed in the written contract.''

It follows that the judgment in this case should be reversed.

[2] In what we have said above, we assumed that the writing dated April 9, 1924, was a valid enforceable contract. Under the settled law of this state and of many other states we went too far in making that assumption. The Campe Company was to make the alterations and improvements. The plans and specifications had not been prepared. When they were prepared it is manifest that they should be prepared by, and to the satisfaction of, the Campe Company. By the clear language of the written instrument dated April 9, 1924, they were also to be approved by Mr. Burrow. There was, therefore, a material element in the writing on which the minds of the parties had not met. However, it was of the very essence of the respondent's contract that he should bring the parties to an agreement. (*Ayres* v. *Thomas,* 116 Cal. 140, 144 [47 Pac. 1013].) There is a long line of cases in this state holding that writings in such form are incomplete and not enforceable as executory contracts to enter into a lease. (*Morrison* v. *Rossignol,* 5 Cal. 64, 65; *Stanton* v. *Singleton,* 126 Cal. 657, 664 [47 L. R. A. 334, 59 Pac. 146]; *Wineburgh* v. *Gay,* 27 Cal. App. 603, 605 [150 Pac. 1003]; *Durst* v. *Jolly,* 35 Cal. App. 184, 189 [169 Pac. 449].) And the same rule has been applied to executory contracts of sale. (*Klein* v. *Markarian,* 175 Cal. 37, 40, 41 [165 Pac. 3].) Speaking of the rule in general, in 1 Williston on Contracts, section 45, the author says:

"Although a promise may be sufficiently definite when it contains an option given to the promisor or promisee, yet if something is reserved for the future agreement of both parties, the promise can give rise to no legal obligation until such future agreement. Since neither party by the very terms of the promise may refuse to agree to anything to which the other party will agree, it is impossible for the law to affix any obligation to such a promise. It should be observed, however, that though such a promise is invalid, it will not necessarily invalidate an entire agreement of which it forms a part." A leading case in New York is a parallel case. (*Mayer* v. *McCreery,* 119 N. Y. 434 [23 N. E. 1045].) In that case Mr. Justice Peckham, speaking for the court, said: "It is in substance an agreement that, *if the parties shall thereafter agree upon plans for the alteration of the building,* that thereupon a lease of the building upon the terms specified in the letters will be given by the defendant to the plaintiff." (Italics ours.)

On the uncontradicted evidence it follows that the respondent never performed his contract and he was not entitled to recover.

The judgment is reversed.

Nourse, J., and Langdon, P. J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on April 8, 1926, and a petition by respondent to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 3, 1926.