(116 App. Div. 715)

### COLE et al. v. KOSCH.

(Supreme Court, Appellate Division, Second Department. January 11, 1907.)

BROKERS—RIGHT TO COMMISSION—BRINGING PARTIES TO AN AGREEMENT.

Plaintiffs are not entitled to a real estate broker's commission for sale of land, listed with them by defendant at $13,000, where they got H. to take an option on it at such price, but he let it expire, and thereafter submitted through them an offer of $12,500, which was refused, defendant saying $13,000 was the price; and thereafter H., in the name of another,

submitted through another broker an offer of $12,750, which was accepted; plaintiffs not having brought the minds of the seller and purchaser together, and not having had an exclusive agency; and this, though, when defendant ascertained that the title was to be taken for II., he expressed fear of a suit by plaintiffs, and wanted to be protected against a double claim for commissions.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 8, Brokers, §§ 82–84.]

Hooker, J., dissenting.

Appeal from Westchester County Court.

Action by Abram H. Cole and another, partners, as A. H. Cole & Son, against Harry G. Kosch. From a judgment for plaintiffs, and from an order denying a motion for new trial, defendant appeals. Reversed, and new trial ordered.

Argued before WOODWARD, JENKS, HOOKER, GAYNOR, and RICH, JJ.

Edward R. Otheman, for appellant.
Charles A. Van Auken, for respondents.

JENKS, J. The action is to recover broker's commissions on the sale of land. The title was in Kosch for himself and Mrs. Coffin, and the latter's husband had charge of the property for the owners. In August, 1905, the land had been listed with the plaintiffs as real estate brokers, who had set up a sign upon it. In that month Humphreys came to the plaintiffs, and asked them to ascertain the owner's terms. Within a day or two Coffin and Humphreys were brought together by plaintiffs, and the land was inspected by the three men. Humphreys asked for an option of $13,000 and commissions over Labor Day. Kosch was called to the telephone and consented. The option expired. The plaintiffs thereafter submitted on behalf of Humphreys an offer of $12,500, but were informed that the price was $13,000. Subsequently, on September 6th, Williamson, who represented another broker, called to see Kosch, and offered $12,500 on behalf of a prospective purchaser. Finally Kosch accepted his offer of $12,750 and the land was sold. The contract of sale was signed by a Mrs. Champney, who turned out to be the mother-in-law of Humphreys, and the deed was finally made out to Mrs. Humphreys. The facts of the transaction initiated by the visit of Williamson and culminated by the sale to Mrs. Humphreys were elicited from the defendant who was called as a witness by the plaintiffs. On cross-examination of the plaintiff Harry A. Cole, the defendant, read in evidence a letter of the plaintiffs to the purchaser, dated September 4, 1905, which, after referring to another matter, states:

"Was unable to induce Mr. Coffin to consider $12.000 or $12.500 for the Homstead property, and he says absolutely 'nothing doing,' under the $13,000. Better consider again on this valuable plot."

At the close of the plaintiffs' case, the defendant moved for a dismissal, on the ground that the plaintiffs' own testimony showed that the lowest price they were ever authorized to offer this property at was $13,000, and the best offer they ever received from a purchaser was $12,500. The motion was denied under exception, and the de-

fendant rested, whereupon the court submitted the case to the jury which found for the plaintiffs. I think that the learned court erred.

The question is whether there was any evidence to justify the submission to the jury as to whether the plaintiffs brought the minds of the seller and purchaser to an agreement for this sale at the price and at the terms thereof. Sibbald v. The Bethleham Iron Company, 83 N. Y. 378, 38 Am. Rep. 441. We may concede that the attention of Humphreys was called to the land by the plaintiffs' sign on it, that he was brought into contact with Coffin and Kosch by the plaintiffs, that he was induced by them to ask for an option upon the land, and that they made offers for the land on Humphreys' behalf. But all these acts may be characterized by the words of Finch, J., in Sibbald's Case, supra:

"He may have introduced to each other parties who otherwise would have never met; he may have created impressions which, under later and more favorable circumstances, naturally lead to and materially assist in the consummation of a sale; he may have planted the very seeds from which others reap the harvest; but all that gives him no claim. It was part of his risk that failing himself, not successful in fulfilling his obligation, others might be left to some extent to avail themselves of the fruit of his labors."

The terms as stated to plaintiffs were $13,000 and commissions. As appears from the letter of September 4th written by plaintiffs to Humphreys, they offered but $12,000 and then $12,500, which offers were refused, for the plaintiffs write in effect that the price is $13,000. And that they had no authority from Humphreys to increase the offer is indicated by the succeeding sentence of the letter, "Better consider again on this valuable plot."

The rule is not affected by the fact that Kosch subsequently sold the land to the wife of Humphreys or to Humphreys himself. Freedman v. Havemeyer, 37 App. Div. 518, 520, 56 N. Y. Supp. 97; Wylie v. Marine National Bank, 61 N. Y. 415, 419. There is no indication that Kosch was guilty of any bad faith. Williamson offered him $12,500, the highest price theretofore submitted by the plaintiffs. He declined it, and then as he himself puts it:

"I was a little tired about dickering with the property, and he raised his offer $12,750, and I accepted the offer."

There is nothing to dispute or to discredit his testimony that he supposed that he had made the sale to some person other than Humphreys. He asked Williamson the question whether the purchaser was Humphreys, and he was told that it was not Humphreys, but a Mrs. Champney. Mrs. Champney signed the contract, and on the next day Kosch received a payment on account, less the broker's commissions.

The learned counsel for the appellant contends that Ware v. Dos Passos, 162 N. Y. 281, 56 N. E. 742, is authority in his favor. In that case the court held that the admission of the defendant to the effect "that he considered the plaintiff to be what the law denominated 'the procuring cause'" was evidence to support the plaintiff, and therefore the judgment of nonsuit should be reversed. In the case at bar,

Kosch says it is true that he never took the property out of the plaintiffs' hands until he sold it. But there is no proof that the agency was exclusive, and the mere fact that it was left in their hands did not preclude Kosch from selling it aside from them. Freedman v. Havemeyer, supra. He does not testify that he did not sell through any other agent, but that no one was brought in person to him by any other agent. "I sold the property." This is not in contradiction of his subsequent testimony that he sold through Williamson representing the purchaser. He does not testify in effect that the plaintiffs were "the procuring cause." It is true that when he ascertained at the time the contract was signed by Mrs. Champney that the title was not to be taken by her but by the wife of Humphreys, that he told Humphreys' attorney that from the facts he had in his possession he deemed the contract was obtained from him by misrepresentation, and that he would resist any attempt to transfer the title, because he would be subject to a lawsuit by the plaintiffs. But Kosch had considered himself entirely free to sell the property, for he had contracted to sell it, and he must have considered that the sale was through Williamson, for he accepted the payment less the commissions to Williamson's employer—another broker. His final hesitation was due plainly to the revelation that the sale was to Humphreys' wife. He did not assert or admit that the plaintiffs had aught to do with this sale, but feared "a lawsuit." He wished "to be protected and not be subjected to a double claim for commissions." In fine, his lay mind was disturbed lest he might be subject to a claim on the part of the plaintiffs, because Humphreys had in the beginning through them secured an option (which had expired before the sale), and had made offers (for smaller prices which had been rejected before the sale), and that it came to light that he had after all unwittingly sold the lands to Humphreys' wife. This is quite different from the admission by a defendant who is a lawyer (and the court in Ware v. Dos Passos, supra, lay stress on that circumstance) that the broker is the procuring cause, for the court in Wylie v. Marine National Bank, supra, say:

"Under these circumstances the bank violated none of his rights by selling to the first party who would offer their price; and it matters not that they sold to the very party with whom plaintiff had been negotiating. He failed to find or produce a purchaser upon the terms prescribed in his employment, and the bank was under no obligation to wait any longer, that he might make further efforts."

I think that the learned County Court erred in not granting the motion to dismiss, and that therefore the judgment and order must be reversed, and a new trial be ordered; costs to abide the event. All concur, except HOOKER, J., who dissents.

102 N.Y.S.—2