## GARDNER et al. v. PIERCE.

(Supreme Court, Appellate Division, First Department.　April 8, 1909.)

1. BROKERS (§ 8*)—EMPLOYMENT—EVIDENCE.

Evidence *held* not to justify a finding that plaintiffs were employed as brokers to sell a yacht for defendant.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 9; Dec. Dig. § 8.*]

2. BROKERS (§ 52*)—COMMISSIONS—WHEN EARNED.

A broker employed to procure a purchaser, to recover commissions, must bring the minds of the purchaser and owner to an agreement for a sale, and until that is done the right to commissions does not accrue.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 73; Dec. Dig. § 52.*]

3. BROKERS (§ 57*)—COMMISSIONS—WHEN EARNED.

Where a broker employed to procure a purchaser of a yacht never brought the minds of the purchaser and the owner to an agreement as to the terms of the sale, and the owner sold the property to the purchaser for $72,000 after the broker had received an offer from the purchaser of $35,000, the broker was not entitled to commissions.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 66; Dec. Dig. § 57.*]

4. BROKERS (§ 44*)—AUTHORITY TO PROCURE PURCHASER—REVOCATION.

The authority of a broker to procure a purchaser of property may be revoked by the owner at any time before a sale is consummated, and where the revocation is in good faith the owner is not liable for the commission, though a sale is subsequently made to the person with whom the broker was negotiating.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 45; Dec. Dig. § 44.*]

5. BROKERS (§ 44*)—AUTHORITY TO PROCURE PURCHASER—REVOCATION.

Where an owner employing a broker to procure a purchaser of property terminated the authority of the broker after receiving an offer from a person with whom the broker was negotiating, and subsequently dealt directly with such person and made a sale for a price over twice as much as the offer to the broker, the broker was not entitled to commissions, for his authority had been terminated in good faith and not to avoid payment of commission.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 45; Dec. Dig. § 44.*]

Patterson, P. J., and Scott, J., dissenting.

Appeal from Trial Term, New York County.

Action by William Gardner and another against Henry Clay Pierce. From a judgment for plaintiffs, and from an order denying a new trial, defendant appeals.　Reversed, and new trial granted.

Argued before PATTERSON, P. J., and INGRAHAM, LAUGHLIN, McLAUGHLIN, and SCOTT, JJ.

Marvin W. Wynne, for appellant.

Charles De Hart Brower, for respondents.

McLAUGHLIN, J.　The plaintiffs were employed by the defendant to design and superintend for him the construction of a yacht, for which he agreed to pay them 5 per cent. of its cost.　Under a

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

contract for the construction, it was to be completed on or before the 1st of January, 1902. The plaintiffs made several alterations in the plans during the progress of construction which were not satisfactory to the defendant, in consequence of which he, on the 9th of December, 1901, notified them that the yacht was not being constructed according to agreement, that it was unsatisfactory, and demanded that work upon it be stopped, which was apparently done. On the 13th of March, following, he sold the boat to one A. C. Burrage for $72,000, who assumed all contracts relative to its construction, and this action was brought to recover commissions alleged to have been earned by the plaintiffs in making the sale. The complaint alleges that the defendant employed plaintiffs as brokers to sell the boat, that the sale resulted from their services, for which the defendant agreed to pay, and the same were reasonably worth, the sum of $3,600, being 5 per cent. of the purchase price. The answer denied the material allegations of the complaint, and also set up a counterclaim, which is not involved in this appeal. The jury rendered a verdict in favor of the plaintiffs for the full amount claimed, with interest, and from the judgment entered thereon and an order denying a motion for a new trial, defendant appeals.

I am of the opinion that the verdict, if not against the evidence, is so much against the weight of it that the judgment cannot be sustained. At the trial it appeared that on the 10th of December, 1901, the day following the one on which the defendant had notified the plaintiffs that work upon the boat must stop, the parties met at the Hotel Netherland in the city of New York. One of the plaintiffs, Cox, was unable to fix the date of this meeting, testifying that it was some time between the 10th of December, 1901, and the 24th of February, 1902. The other plaintiff, Gardner, was, however, able to and did fix the date as the 10th of December. Their claim is predicated upon what is alleged to have then taken place; each of them testifying that the defendant said the best way out of the difficulty was for the plaintiffs to sell the boat, which, by his authority, they did. Cox testified: That after the interview he learned of Burrage as a possible purchaser through a Mr. Hutchinson, of Boston, to whom he sent plans and a description of the boat; that he subsequently told the defendant that Burrage would like to purchase the boat and tried to see the defendant and have him fix a price at which he would sell; that he had several interviews with a friend of Burrage's, one Smith, with reference to the purchase; that he also showed an agent of Burrage's, one Bemis, over the boat, and at his request prepared and sent to Burrage, who was in California, a detailed description of it; and that shortly thereafter he made the purchase.

But assuming the plaintiffs did all that is claimed in this respect, it does not establish that they were acting for the defendant, or that they were the procuring cause of the sale for him so as to become entitled to the commissions claimed. On the contrary, the correspondence between the parties, it seems to me, conclusively establishes that the plaintiffs never were employed by the defendant or authorized in any way by him to sell the boat. On the 17th of January, 1902—

and the plaintiffs, as we have already seen, claim they were employed on the 10th of December, 1901—they wrote the defendant stating:

"About six weeks ago we wrote you concerning your boat, the only answer to which we have had is a letter from you stating that you were too busy to take the matter up. * * * Last Saturday, having an inquiry for a similar boat, we telephoned you, * * * when you said you would see us Monday, as we told you that our client would be here on Tuesday. * * * Our client has left for California, and we will have to send any information to him there, which you will perceive renders any negotiations more difficult."

The "client" referred to was undoubtedly Burrage, and the only meaning that can be given to this letter is that the plaintiffs were representing him as broker in purchasing the yacht, and not the defendant in selling it. The statements contained in the letter are inconsistent with the claim that the relation of broker and principal existed between the plaintiffs and the defendant. Ten days later the plaintiffs again wrote the defendant, as follows:

"We called you on the 'phone this morning in relation to the sale of 'Orizava.' [This was the name of the boat.] * * * You are losing, by delaying seeing us, the best chance we know of selling 'Orizava' at a satisfactory price, and we cannot but feel that you should surely give us some attention in so important a matter to yourself as well as us. However, you are fully conversant with the whole situation, and we will await your instructions, both as to the further details of the construction and your wish in regard to disposal of her."

The statement that the plaintiffs would await the defendant's instructions "as to the further details of the construction" or his "wish in regard to disposal of her" shows that the plaintiffs did not then suppose they were authorized to sell the boat, and the instructions which they desired were in the alternative either to construct or sell, and, if they had already been employed to sell, why the necessity for any instructions? On the 21st of February, 1902, they again wrote the defendant, but the letter referred solely to alterations in the boat and said nothing whatever with reference to selling. To this letter, two days later, the defendant replied, blaming the plaintiffs for the plans, and concluding by saying:

"There is nothing to be gained except annoyance and vexation by continuing this sort of controversy."

This was the last communication which the plaintiffs received from the defendant, and it is very significant that in neither of these letters was there a single reference to the employment of plaintiffs to sell the yacht. Immediately following this correspondence, the defendant went to Palm Beach, Fla., and on the 24th of February Cox again wrote him, addressing the letter to him there. In this letter he stated:

"We had Mr. A. C. Burrage's man on board the 'Orizava' yesterday. He was much pleased with her, and he said that he thought Mr. Burrage would make a bid for the boat, provided she could be gotten out for this summer's use. * * * If you will * * * make up your mind as to what you want to do in time to give the boat a chance to get out this year, we think some business can be done with Mr. Burrage. * * * We would simply remind you in conclusion that nothing will be gained from our standpoint or yours by further delay in your making up your mind as to what you are going to do with 'Orizava.'"

On the following day they wrote one Nixon, who had the contract for the construction of the boat, and who was also then at Palm Beach, saying:

"If you feel that Pierce is not going to do anything satisfactory to you you can certainly negotiate with Mr. Burrage to protect yourself and finish the boat."

If the plaintiffs had been authorized to sell, as they claim, why should they be urging the defendant to make up his mind as to what he was going to do?

It appears that, soon after the date of the correspondence last mentioned, both of the plaintiffs left New York, and all negotiations thereafter were conducted by an employé of theirs named Walker, whose authority to act for them was admitted at the trial. He was not produced as a witness; the plaintiff Gardner testifying that he was no longer in their employ and was at that time ill and in Pennsylvania. Except as contained in the letters, there is no evidence as to what was thereafter done by him, representing the plaintiffs, in bringing about a sale. On the 4th of March he wrote the defendant at Palm Beach:

"We beg to confirm our wire to-day as follows: 'Mr. Burrage makes offer of $35,000 cash for your yacht, he to assume your contracts from date of transfer. Kindly wire reply as soon as possible.' And we hope to receive your reply to-morrow. As we wrote you the other day, Mr. Burrage is very much interested in your yacht 'Orizava,' and we feel sure we can aid you in bringing about a deal if you so desire."

If plaintiffs had been employed as they claim they were, why should they ask defendant's permission to aid him in making a sale? This letter, beyond question, recognizes the fact that the defendant had not theretofore employed the plaintiffs to sell the boat, and they did not suppose he had. The defendant paid no attention to this or the subsequent communications addressed to him. The sale was actually consummated by the defendant's son-in-law, Richards. By the terms of the contract Burrage agreed to pay defendant $70,000 (twice the amount of the offer submitted by the plaintiffs), being the amount he had already paid to the builder, and in addition what he had paid to the plaintiffs, which was $2,000. Richards testified: That in the course of his negotiations with Burrage he desired to learn what amount the defendant had paid the plaintiffs, and for that purpose and no other he called at their office; that he then saw Walker, who told him that $2,000 had been paid, and they had made an offer to the defendant on Burrage's account, and should want a commission, if a sale were made; and that he then said to Walker the defendant would not recognize any claim of theirs for commissions, and they had not been and were not authorized to sell. Immediately following this interview, Walker, on behalf of the plaintiffs, wrote the defendant:

"In reply to our Mr. Walker's conversation with Mr. Richards this morning as to what your obligations to us are, we beg to state as follows: As agreed between you and ourselves, for designing and superintending construction 5 per cent. on the total cost of yacht; and in addition, in the event of our carrying through sale, 5 per cent. on the total amount you accept."

This letter was addressed to the defendant at the Hotel Netherland in the city of New York. The plaintiffs knew he was in Florida. They

had addressed a letter to him there on the 4th of March, and also sent one to him there on the 6th of March. Indeed, this is the only letter in which the subject of commissions for procuring the sale is mentioned at all, and the fact that it was sent to him at his New York address, they knowing that he would not there receive it, is suspicious in itself and would seem to indicate an attempt on their part to manufacture evidence, in case a sale were made, to sustain a claim for commissions. The letter was dated March 5th, and on the following day they telegraphed and also wrote the defendant at Palm Beach, and in the letter said:

"We beg to confirm our wire of this morning: 'Is Mr. Burrage's offer of interest? If not, kindly wire your best figure and terms immediately.'"

And on the 10th of March they again telegraphed and wrote the defendant at Palm Beach, saying in the letter:

"We beg to confirm our wire to-day as follows, 'Kindly advise us what we can say to Mr. Burrage,' and would appreciate it very much if you would kindly let us know if we cannot take up this matter with Mr. Burrage regarding figure on 'Orizava.' * * * We understand indirectly that you are endeavoring to work with him direct, but * * * we would very much appreciate it if you would kindly give us the full particulars, as at this writing we have received no communication from you relating to our previous wires, and we feel sure if you will give us some information we can be of great assistance in consummating the deal."

This letter, it will be noticed, was written only three days before the sale was actually made, and it is not claimed, or even suggested, that the plaintiffs in the meantime received any communication from defendant, or that they took any part in arranging the terms of the sale. If they had been employed as brokers to sell, it is inconceivable that they would have asked permission of defendant if they could not "take up this matter with Mr. Burrage." They did not know the price at which the defendant would sell, and they could not get him to name a price. The plaintiffs' claim, when confronted by their own letters, places them in an anomalous position—brokers claiming to be authorized to sell, without knowledge of the price at which a sale can be made, asking at or immediately prior to the sale for permission to sell, which the principal refuses to give. Without considering the defendant's evidence at all, the whole correspondence conclusively disproves that the plaintiffs were ever employed by the defendant to sell the boat. As we have already seen, they were to be paid a percentage of the cost of construction, and naturally they were anxious that the defendant should either complete the boat himself, or sell it to somebody who would do so, and this is precisely what their letters show.

But if it be assumed that they were authorized to sell, then the evidence which they adduced at the trial is insufficient to sustain a finding that they were the procuring cause of the sale. The most favorable view that can be taken of the evidence is that the plaintiffs learned of Burrage as a possible purchaser, that they succeeded in interesting him in the boat, that they showed his agent over the boat, and finally secured an offer of $35,000 from him. Indeed, the fact that he made an offer of $35,000 was not proven at the trial, but assum

ing that it was made in good faith, and that the defendant first learned of Burrage through the plaintiffs, then I do not think they were entitled to commissions on the sale which was in fact made. The case, it seems to me, falls squarely within the principles laid down in Sibbald v. Bethlehem Iron Co., 83 N. Y. 378, 38 Am. Rep. 441. There the defendant had employed plaintiff to sell steel rails of its manufacture to the Grand Trunk Railroad Company. After various unsuccessful negotiations, plaintiff finally received a telegram from the railroad company asking for terms on 1,000 tons of rails, and the defendant, though requested by him, refused to quote terms, and it subsequently negotiated a sale through another broker. In holding that the plaintiff had not been the procuring cause of the sale, Judge Finch, who delivered the opinion, said:

"But in all cases, under all and varying forms of expression, the fundamental and correct doctrine is that the duty assumed by the broker is to bring the minds of the buyer and seller to an agreement for a sale, and the price and terms on which it is to be made, and until that is done his right to commissions does not accrue. * * * He may have introduced to each other parties who otherwise would never have met; he may have created impressions which, under later and more favorable circumstances, naturally lead to and materially assist in the consummation of a sale; he may have planted the very seeds from which others reap the harvest—but all that gives him no claim."

The circumstances are less favorable to the plaintiff in this case than they were in the Sibbald Case. Here the defendant had never quoted his terms to the plaintiffs at all, though they had repeatedly requested him to do so. They never brought the minds of the purchaser and seller together as to the terms, for the only offer which they claim was made through them was $35,000, while the defendant finally sold the boat for $72,000. The mere fact that their efforts led to subsequent negotiations which resulted in a sale—and the most favorable view of the evidence shows nothing else—does not entitle them to commissions. Donovan v. Weed, 182 N. Y. 43, 74 N. E. 563; Cole v. Kosch, 116 App. Div. 715, 102 N. Y. Supp. 14; Miller v. Vining, 112 App. Div. 304, 98 N. Y. Supp. 466; Freedman v. Havemeyer, 37 App. Div. 518, 56 N. Y. Supp. 97.

I am also of the opinion that the court erred in charging the jury, to which an exception was taken, as follows:

"Of course, it does not matter, if you find that the defendant did authorize them to secure a purchaser for that yacht, and if they found that purchaser and brought him into touch with the defendant—it does not matter who else intervened, whether Richards or anybody else, and conducted the subsequent closing of the transaction. If that bringing together of the parties on the part of the plaintiffs resulted in a satisfactory price offered by the purchaser to the seller and resulted in the sale, then they are entitled to their commission. * * *"

This was, in substance, repeated later in the charge, and by these instructions the only questions left for the jury were whether plaintiffs had been employed, and whether they brought Burrage into touch with the defendant. This was erroneous. A broker's authority may be revoked at any time before the sale is consummated, and, if the revocation is in good faith, it does not matter if a sale is thereafter made

to the very party with whom the broker was negotiating. Sibbald v. Bethlehem Iron Co., supra.

Here, upon the evidence, assuming that the plaintiffs had been authorized to secure a purchaser, the only question for the jury was whether defendant had revoked plaintiffs' authority in bad faith to avoid the payment of commissions about to be earned; but this was not pleaded, nor was the case tried upon that theory. Besides, the fact is undisputed that long prior to the time the sale was made the defendant refused to name a price, had in effect terminated whatever authority they had by stating on the 23d of February, in a letter then written by him, that there was "nothing to be gained except annoyance and vexation by continuing this sort of controversy," and thereafter refused to answer any of their communications. He dealt directly with the purchaser and obtained a price over twice as large as the only offer the plaintiffs claim to have made. Under such circumstances, it cannot be said that he terminated their authority in the midst of negotiations plainly approaching success, in bad faith, to avoid payment of commissions.

The judgment and order appealed from must be reversed and a new trial granted, with costs to appellant to abide event.

INGRAHAM and LAUGHLIN, JJ., concur. PATTERSON, P. J., and SCOTT, J., dissent.