## ACTION TO RECOVER A COMMISSION BY ONE WHOSE AGENCY HAD BEEN TERMINATED.

Common Pleas Court of Hamilton County.

JOSEPH P. McCUDDEN v. HARRY H. BROCKMEYER.

Decided, June, 1915.

*Agency—Attempt of Agent to Represent Both Parties—Relieves Both from Liability for His Services, When—Test as to Whether an Agent is a Mere Middleman—Revocation of Agency—Charge of Court.*

1. An agent who assumes to act for both parties in a transaction can not recover compensation from either party, even upon an express promise, unless it is clearly shown that each principal had full knowledge of all the circumstances connected with his employment by the other and had assented to the double employment.

2. In order to determine whether or not an agent is a mere middleman, reference must be had to the contract of employment, and where the contract of employment authorizes the agent to sell the property and confers authority to negotiate, the agent is not then a mere middleman and therefore can not act for the other party to the transaction without the consent of his principal, and in the event that he does so he can not recover the compensation fixed in his contract.

3. Where it appears from the evidence that the plaintiff was employed as agent to sell, among other things, a state license to traffic in intoxicating liquors, and the principal was informed before the consummation of the transaction that the board of liquor license commissioners would not consent to the transfer of any license that had been brought about by the negotiations of the agent, the principal had the right under those circumstances, while acting in good faith, to revoke the agent's license, and an instruction to the jury that if they found under the circumstances that the agent's authority to sell was in good faith revoked by his principal, the agent would not be entitled to a commission, notwithstanding that the sale was subsequently made to a party with whom the agent had been negotiating, is not erroneous.

*William F. Fox,* for the motion.
*Thomas K. Schmuck,* contra.

GEOGHEGAN, J.

Two grounds are assigned by counsel for plaintiff as a reason for setting aside the verdict of the jury in favor of the defendant and for granting a new trial herein, to-wit, the giving of two special charges which counsel for plaintiff excepted to at the time.

The first special charge is as follows:

"If you find from the evidence that McCudden acted as agent for both Pieper and Brockmeyer in the sale of the latter's property, and if you find that this was not known to and assented to by both Pieper and Brockmeyer, I charge you to return a verdict for the defendant."

This action is based upon a written contract between McCudden and Brockmeyer as follows:

"It is hereby understood that J. P. McCudden & Son, No. 322 Main street, has the right to sell saloon and grocery at No. 912 Central avenue; no definite time is made and owner has right to sell same as he see fit in his own right; owner has right to reject anything transacted in this respect; owner and undersigned agrees to pay 5% on the deal to Mr. McCudden if sale is made by him alone.   Harry H. Brockmeyer."

It seems that Brockmeyer was the owner of a saloon and grocery, which he was desirous of selling, as well as the license that had been granted to him to conduct the saloon. McCudden was engaged in the business of acting for prospective sellers and buyers of saloons and saloon licenses. McCudden furnished Brockmeyer with the name of one Folken, and Brockmeyer and Folken completed negotiations for the transfer of the grocery and saloon and license, but the liquor license commissioners for Hamilton county refused to grant a transfer of the license of Brockmeyer to Folken, and consequently the deal fell through. Either at the time of the application for the transfer of the license to Folken, or subsequent thereto, Brockmeyer was informed by one of the clerks of the liquor license commission that no transfer of a license would be granted if McCudden had anything to do with the deal. The testimony is conflicting as to

whether it was prior or subsequent to the time of this declaration to Brockmeyer that McCudden furnished him with the name of Pieper, but at all events Brockmeyer and Pieper subsequently made a deal for the transfer of the grocery and saloon and license, and the transfer of the license was approved by the liquor license commissioners.

Brockmeyer claims that subsequently to his obtaining the information that the liquor license commissioners would not transfer any license, in the negotiations for the transfer of which McCudden was concerned in any way, he notified McCudden that he revoked the authority granted to him in the written contract above set forth.

The plaintiff admits that he had a contract with Pieper whereby, if he secured a saloon and license for Pieper, he would obtain a commission from him.

The instruction complained of above was given under the authority of *Bell* v. *McConnell*, 37 Ohio St., 396, wherein it was held:

"The double agency of a real estate broker, who assumes to act for both parties to an exchange of lands, involves, *prima facie*, inconsistent duties; and he can not recover compensation from either party, even upon an express promise, until it is clearly shown that each principal had full knowledge of all the circumstances connected with his employment by the other which would naturally affect his action, and had assented to the double employment. But when such knowledge and consent are shown, he may recover from either party."

Counsel for plaintiff contends that the doctrine announced in this case has no application to the case at bar, the principal reason being that in this transaction McCudden acted as a mere middle man in whom no trust or confidence was reposed other than that of merely bringing the parties together, whereas, in the case of *Bell* v. *McConnell* there was trust and confidence reposed and the agent was charged with the duty of at least assisting in the consummation of the transaction.

In the case of *Bell* v. *McConnell* the errors complained of were the refusal to give a certain charge requested by the plaintiff, and

a charge given by the court.  The charge refused was to the effect that if the defendant knew that the plaintiff was acting for both parties and assented thereto and assented to the fact that he was to receive a commission from both parties, that plaintiff would be entitled to recover.  The charge given was as follows:

"That if you find that Neal employed plaintiff to sell or exchange his farm in Boardman for cash or property, and agreed to pay him for such services, and if, while so employed, defendant Bell and others, employed plaintiff to find a purchaser for their (defendant's) city property, or one who would exchange country property for it, and if plaintiff's duty was simply to bring the buyer and seller together, and for that service defendants agreed to pay plaintiff a fixed amount, and if plaintiff performed that service the defendants are bound in law to pay said amount so fixed, even though plaintiff was acting as agent for the party—in this case Neal—so introduced.

"But I say to you, if the contract between plaintiff and defendants was, that plaintiff should sell for, or assist the defendants in selling or exchanging their property, and did so sell or exchange defendant's property, or assist them in selling it to, or exchanging it with Neal, while he was also acting for Neal, or assisting him in the same sale or exchange, under a contract with said Neal for pay on the part of said Neal for such services so rendered him, then plaintiff is not entitled to your verdict in this case, even though both Bell and Neal were aware of, and assented to said plaintiff's employment and acts in the premises."

McIlvaine, Judge, in his opinion in this case says:

"This case presents the single question:  Can a real estate broker, who assumes to aid both contracting parties in making an exchange of real estate, recover compensation for his services from either, upon an express promise to pay, in a case where each principal had full knowledge of and assented to the double employment?

"It has been decided (*Rupp* v. *Sampson,* 16 Gray, 398, and *Seigel* v. *Gould,* 7 Lans., 177), and is not doubted, that such broker may recover from both or either where his employment was merely to bring the parties together; and it is equally clear, both upon principle and authority, that in case of such double

employment he can recover from neither, where his employment by either is concealed or not assented to by the other. Several reasons may be given for this rule. In law, as in morals, it may be stated that, as a principle, no servant can serve two masters, for either he will hate the one and love the other, or else he will hold to the one and despise the other. Luke 16: 13.''

The difficulty, however, presented by the case of *Bell* v. *McConnell* is, whether the court was laying down a rule of general public policy that no man should act as agent in any capacity for two parties to a transaction, or, whether the court was simply laying down the rule that a person who acted as an agent with some further duty or discretion in the matter other than that of merely bringing the parties together could not recover from either party, and this difficulty is not a little enhanced by the affirmance of the district court, which reversed the common pleas court for the failure to give the charge as requested and the giving of the charge that it did give. Now it will be observed in the reading of the charge that the court did give, that the court charged the jury that if the duty of the plaintiff was simply to bring the buyer and seller together, the plaintiff could recover even though he was acting as agent for the other party; but that if the plaintiff was to sell or assist the defendants in selling or exchanging their property, why then he could not recover, even though both parties were aware of and assented to said plaintiff's employment and acts in the premises, and I must confess that I have read this case a number of times and have been unable to determine to my entire satisfaction just whether the objection to the charge was to the rule laid down in the first paragraph of the charge as given, or to that laid down in the second paragraph, or to both.

So, therefore, some recourse must be had to the authorities in order to determine whether or not the charge complained of in the case at bar was a correct application of the law to the contract between the parties to this case.

The earliest important case upon this subject is the case of *Rupp* v. *Sampson,* 16 Gray, 398, decided in 1867, wherein it was held:

"If a middleman brings together a buyer and a seller, each of whom has agreed, without the knowledge of the other, to pay the middleman a commission on any contract which may be made between them, and a contract is made between them, in the making of which the middleman takes no part as agent for either, the conduct of the middleman in concealing from each his agreement with the other is not fraudulent, and is no defense to an action brought by him against either to recover the commission agreed upon."

And the court in that case clearly distinguishes between a middleman, who simply undertakes to bring buyer and seller together, and one employed as a broker to buy or sell goods, holding that in the latter case it would be a fraud for the agent to conceal his agency for one from the other.

This case was followed with approval in *Siegal v. Gould*, 7 Lansing, 177, decided in 1872, wherein the same distinction was pointed out, the contract, however, not being that the plaintiffs, who were real estate brokers, should sell, but that they should find a purchaser for the property placed in their hands, the court holding that "the case would have been quite different if the plaintiffs had been employed as agents of the defendant to buy or sell."

This same distinction was pointed out in *Knauss v. Brewing Company*, 142 N. Y., 70.

So it would seem that the determination as to whether this instruction was correct depends entirely upon the construction of the contract entered into between the parties.

It will be observed that this contract provided that Mc-Cudden was to sell and that he was to get five per cent. on the deal if the sale was made. Now, while it is true that all McCudden did was to bring the parties together, and it is conceded by Brockmeyer that if the Folken transaction had gone through he would have paid the commission, and it is further conceded by Brockmeyer that all that McCudden did with reference to the Folken contract was to send Folken to Brockmeyer and that thereupon they made their own terms, nevertheless, it can not be denied that by the explicit language of the

contract McCudden was charged with the duty of selling, and therefore it seems to me that the doctrine of *Walker* v. *Osgood*, 98 Mass., 348, decided November, 1867, is applicable to the circumstances of this case, and if it is the instruction given is undoubtedly correct. In that case it was held:

"A broker employed to sell or exchange property, under a under a written promise of compensation in case he sends a customer with whom a sale or exchange is effected, becomes agent of the owner, and can not properly act for a customer; and, if he exacts from a customer a conditional promise of compensation before sending him to the owner, can not recover any compensation from the owner for services, although a sale or exchange is effected with such customer."

The contract sued upon in that case was as follows:

"If you send or cause to be sent to me by advertisement or otherwise any party with whom I may see fit and proper to effect a sale or exchange of my real estate above described, I will pay you the sum of two hundred dollars."

The defendant in that case resisted the demand for the stipulated commission on the ground that the plaintiff was employed for a compensation by the other party in the same transaction. The lower court ruled that this would not of itself defeat the claim, assuming that the stipulation signed by the defendant expressed the whole obligation of the defendant, so that he had merely to show a compliance with it to entitle him to the sum named. But the Supreme Court at page 351 say:

"But the plaintiff's employment as a broker involved something more than this. Even if he had no authority to bind his principal, and was intrusted with no discretion in fixing the terms of the exchange, and his only service was to bring the parties together, he was bound to perform that service in the interest of the party who employed him. Such employment is not like the offer of a reward for the performance of some act which another may undertake or forego as he shall please. Employment implies acceptance of the service. A broker thus employed does not act in good faith if he turn aside all proposals

that are not accompanied with an additional retainer or commission. Yet such is the temptation upon him, if he may levy a fee from both parties. When he has secured the retainer of the other party, he is interested, in order to win his double commission, to bring together these two, to the exclusion of all others. The interests of his principal are in danger of prejudice from this counter interest in the agent. And besides, the broker is ordinarily and almost inevitably intrusted, to a greater or less extent, with the confidence of his principal, and a knowledge of his views and purpose. This is incompatible with like relations to the other party. From the very nature and necessities of the case, such twofold interests and relations of the broker are inconsistent with the interests of the principal, and should not be maintained without his knowledge and consent.''

The court distinguishes the case of *Rupp* v. *Sampson, supra,* by holding that the circumstances surrounding the transactions in *Rupp* v. *Sampson* were different and devolved no such degree of duty upon the agent as they did in the case which the court had before it.

And in *Scribner* v. *Collar,* 40 Mich., 375, the court, in construing the written contract in that case, uses language which can be applied to the terms of the contract upon which this action is brought:

''The writing placed the property for sale or exchange in plaintiff's hands and then reserved an option as to whether the final disposition should be a sale or an exchange and expressly required defedants to afford the plaintiffs all the assistance he could in making such sale or exchange. The contract had large scope and went much further than to constitute the plaintiffs mere middlemen to bring some particular third person, or even any one in general, into a position to negotiate with the defendant. It conferred authority to negotiate and reposed trust and confidence and contemplated that the plaintiffs should act in defendant's interest and should exert their judgment and their influence in his behalf.''

Now, applying the aforesaid principles to the contract entered into by the parties in the case at bar, it would seem that Brockmeyer having authorized McCudden to sell the property,

he constituted McCudden something more than a mere middle-man. In that view the instruction was not erroneous.

The second instruction complained of is as follows:

"If you find from the evidence that McCudden's authority to sell Brockmeyer's property was revoked in good faith, and that thereafter Brockmeyer made a sale of the property to a person with whom McCudden had been negotiating, I charge you that the plaintiff is not entitled to a commission from Brockmeyer on such sale."

There does not seem to be any doubt but what a broker's authority may be revoked at any time in good faith, and it does not matter if a sale is made thereafter to the very party with whom the broker was negotiating. *Gardner* v. *Pierce*, 116 N. Y. Supp., 155.; *Bailey et al* v. *Smith*, 103 Ala., 641.; *Uphoff* v. *Ulrigh et al*, 2 Bradwell (Ill. App.), 399.

But even if this rule in its strict application be doubted, certainly under the circumstances of this case Brockmeyer, in the exercise of good faith, after he had been informed that the liquor license commission would not transfer any license that had been brought about by the negotiations of McCudden, had a right to revoke McCudden's authority.

The law of Ohio with reference to the transfer of liquor licenses must be read into and made a part of this contract, just the same as if it were expressly contained therein. The law authorizing the granting and transferring of liquor licenses gives a wide discretion to the liquor license board in the transfer of licenses; in fact, so broad a discretion that when the question of the constitutionality of the act was presented to me it was urged that this discretion was so broad that it amounted to the conferring of judicial powers upon a purely administrative board (*Ex Parte Scott*, 15 N.P.[N.S.], 321). So that it would seem that under the peculiar circumstances of this case, and having this information in mind, there was a perfect right on the part of Brockmeyer to revoke McCudden's authority, and it can not be complained of that subsequently he entered into negotiations with some person whose name had been suggested to him by McCudden, and the defendant was entitled to an instruction

under these circumstances to the effect that if he acted in good faith in revoking McCudden's authority, he could not be held liable if subsequently thereto he succeeded in making a deal with some person whom McCudden had suggested to him.

The motion will therefore be overruled.